IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Antoinatte Davis, Carmen Feliciano,  )
Teresa Quintello, Ann Francis Gelco, )
Helen Koss, Flora Stewart, and       )
Elena Meitzler,                      )
individually                         )
and on behalf of a class,            )
                                     )
              Plaintiffs             )   No. 03C 1768
                                     )
       vs.                           )   JUDGE MANNING
                                     )
MICHAEL SHEAHAN,                     )   MAGISTRATE JUDGE ASHMAN
SHERIFF OF COOK COUNTY,              )
in his official capacity,            )
                                     )
              Defendant              )

DOCKETED
MAR 1 3 2003

## COMPLAINT

Now comes the Plaintiffs, by and through their attorney, Thomas G. Morrissey, Ltd., and Robert H. Farley, Jr. Ltd., and complain of the Defendant as follows:

### INTRODUCTION

1.  The Plaintiffs in this case are currently or have been pretrial detainees at the Cook County Department of Corrections ("Jail"). As pretrial detainees at the Jail, the plaintiffs are subjected to weekend lock downs which occur at least once a month. During these lock downs, inmates are confined to their cells starting a 1:30 p.m. on Friday afternoon and are not released until late on Sunday afternoon.

2.  In this lawsuit, the plaintiffs are not challenging the right of Jail officials to conduct random searches in the

1

living quarters of the Jail and to impose lock downs during emergencies. The plaintiffs are challenging the reasonableness of regular, scheduled lock downs which last up to fifty hours over the weekends and are imposed in a harsh and abusive manner by the Sheriff. These prolonged lock downs serve no justifiable administrative purpose at the Jail and amount to punishment of the pre-trial detainees.

3. After a tier is searched during a lock down, the inmates remain in their cells on lock down, despite the fact that there is no valid reason for this restriction. Plaintiffs, as representatives of a class are seeking injunctive and monetary relief

## JURISDICTION AND VENUE

4. Jurisdiction is proper in this court pursuant to 28 U.S.C. Sect. 1331 and 2201, and pursuant to 42 U.S.C. Sect. 1983 and 1988.

5. Venue is proper in this district pursuant to 28 U.S.C. Sec. 1391 (b), as all the events giving rise to the claims asserted occurred in Cook County.

## CLASS ACTION ALLEGATIONS

6.(a) Plaintiffs bring this action as a class action pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

(b) The Class consist of all pretrial female inmates at the Cook County Department of Corrections who have been and/or in the future will be subjected to non-emergency, extended lock

2

downs over a weekend at the Jail.

(c) The class is so numerous that joinder of all persons is impracticable. The practice and policy at the Jail is to lock down the female divisions at the Jail. Plaintiffs believe that the class probably numbers well over 10,000 female inmates.

(d) There are questions of law and fact common to the class. These questions predominate over any questions affecting only individual Class members. These legal and factual questions include:

(i) Whether there are prolonged, weekend lock downs each month at the Jail in the female housing units;

(ii) The amount of time required to conduct a complete search of a tier in the female housing divisions;

(iii) Whether prolonged lock downs each month at the Jail are related to a legitimate governmental interest;

(iv) Whether the Sheriff has a duty during prolonged weekend lock downs, to protect inmates from harm from other inmates;

(v) Whether the safety of female inmates is endangered during the prolonged weekend lock downs;

(vi) Whether during the prolonged weekend lock downs the plaintiffs are able to receive appropriate medical and/or psychological treatment to prevent serious medical injuries;

   (vii) Whether the defendant, as Sheriff of Cook County has the duty to establish procedures and policies and to train deputy sheriffs and C.C.D.O.C. employees not to punish pretrial detainees by engaging in non-emergency, prolonged lock downs.

   (viii) Whether during the prolonged weekend lock downs the plaintiffs are denied access to pay telephones to contact their attorneys and/or to contact relatives for the purpose of posting the required bond to be released from custody; and

   (ix) Whether the prolonged weekend lock downs constitutes punishment of the plaintiffs;

(e) Plaintiffs' claims are typical of the claims of the class.

(f) Plaintiffs will fairly and adequately protect the interest of all class members as they are members of the class and their claims are typical of the claims of all class members. Each of the plaintiffs is incensed at the treatment accorded the class members and will aggressively pursue the interests of the entire class. Plaintiffs' interest in obtaining injunctive and monetary relief for the violations of constitutional rights and privileges are consistent with and not antagonistic to those of any person within the class. Plaintiffs have retained counsel competent and experienced in complex class action litigation.

(g) This matter is brought as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure because the

4

party opposing the class has acted or refused to act on grounds generally applicable to the class, making appropriate final injunctive relief. The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class.

(h) Additionally, this matter is brought as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, because a class action is superior to other available means for a fair and efficient adjudication of this controversy. The damages suffered by individual class members are small compared to the burden and expense of individual prosecution of the action to address defendant's unconstitutional conduct.

## FACTS AND PARTIES

7. Plaintiff Antoinatte Davis is a citizen of the United States and resident of the State of Illinois. Since January 19, 2003, Ms. Davis has been an inmate at the Cook County Department of Corrections, awaiting trial on a felony charge.

8. Plaintiff Carmen Feliciano is a citizen of the United States and resident of the State of Illinois. The Plaintiff Feliciano has been an inmate at the Cook County Department of Corrections on several occasions during the last two years and has been subjected to numerous lock downs. She suffers from bipolar disorder.

9. Plaintiff Teresa Quintello is a citizen of the United

States and resident of the State of Illinois. Since September 25,2001, Ms. Quintello has been an inmate at the Cook County Department of Corrections, awaiting trial on a felony charge.

10. Plaintiff Ann Francis Gelco is a citizen of the United States and resident of the State of Illinois. She has been an inmate at the Cook County Department of Corrections on several occasions during the last two years and has been subjected to numerous lock downs.

11. The Plaintiff Helen Koss is a pretrial detainee in Division IV at the Jail. She has been incarcerated at the Jail since 2001 and has been subjected to numerous monthly prolonged weekend lock downs.

12. The Plaintiff Flora Stewart is a pretrial detainee in Division IV at the Jail. She has been incarcerated at the Jail since 2001 and has been subjected to numerous monthly prolonged weekend lock downs.

13. Defendant MICHAEL SHEAHAN (Sheahan) is an elected county official whose duties include implementing and executing policies concerning the operation of the Cook County Jail (Jail) pursuant to 55 ILCS 5/3-15003. At all times relevant hereto, Sheahan was acting under color of law.

14. At the Jail, female inmates are housed in Division Four and Division Three. Division Four is separated into sixteen separate units which are commonly called "tiers" at the Jail. Likewise, Division Three has separate units which are commonly called "tiers" at the Jail. Each tier has an interlock area which

is staffed by a correctional officer and is the only means of entering and departing the tier.

15. Inside each tier, there is a common holding area, which is called a day room, where inmates receive their meals, have access to pay phones, a television, and can socialize with other inmates in the tier. Each tier has shower stalls, which are adjacent to the day room. The correctional officer is able to monitor from the interlock all the inmates in the day room to maintain security and protection for the inmates from fellow inmates.

16. There are two levels to each tier, with ten cells on each floor. The cells have solid steel door with a small opening, two bunk beds, a toilet and a sink. A correctional officer can not maintain visual contact with the inmates from the interlock once they are placed inside the cells.

17. Three or four times each month, a team of correctional officers enters the tiers and conducts random searches called "shakes" of the cells and the day room for contraband and other unauthorized items. It takes the correctional officers anywhere from twenty to forty minutes to "shake" a tier. During the "shakes", the inmates are normally outside the tier at recreation. In this lawsuit, plaintiffs are not contesting the need to conduct periodic "shakes" and emergency lock downs.

18. In addition to the random "shakes" of the tiers, all pretrial detainees are subjected to weekend lock downs at least

7

once a month. During these lock downs, inmates are confined to their cells starting at 1:30 p.m. on Friday afternoon and are not released until late on Sunday afternoon. During the weekend lockdown, each tier in the division is searched for contraband in the same manner as the random "searches" and it takes the correctional staff the same amount of time to conduct these searches. After a tier is searched, the inmates remain in their cells on lock down, despite the fact that there is no valid reason for this restriction.

19. During weekend lock downs, pretrial detainees are subjected to harsh and cruel conditions which are more onerous than when inmates are placed in solitary confinement after breaking a rule at the "Jail". During lock downs, the "Jail" shirks its duty to protect inmates from harm from other inmates by isolating them behind solid steel cell door with either two or three other detainees. The conditions of the lock down are "dungeon" like in that the Plaintiffs can rarely be seen or heard by the correctional officers through the steel cell door. During the lock down, the Plaintiffs are unable to communicate with correctional officers that they are in need of immediate medical or psychological treatment or in need of immediate protection from their cell roommate.

20. In contrast to solitary confinement where the detainee is released from her cell for one hour a day to shower, exercise, and have access to the telephone; during the weekend lock down, the detainee is neither released from her cell nor

permitted to shower, exercise or have access to a phone to communicate with their lawyer or family.

21. Plaintiffs, as representatives of a class seeking injunctive and monetary relief, are not challenging the need to conduct a lock down at the Jail but rather maintain that the periodic weekend lock downs are unreasonable because the lock downs are imposed in a harsh and abusive manner by the Sheriff. The restrictions and conditions of the lock down amount to punishment of the pre-trial detainees.

22. There are no administrative procedures available to the Plaintiffs at the Jail to challenge or change the standard weekend lock down practice.

23. Upon information and belief, numerous female detainees have objected to the weekend lock down practice.

24. The Plaintiff Antoinatte Davis is bipolar and suffers from maniac depression.

25. During the January lock down, (January 24-26, 2003), Plaintiff Davis was housed in Division IV, Tier M-2.

26. At approximately 1:30 p.m on Friday, January 24, 2003, the Plaintiff Davis and all other inmates in the tier were confined or lock down in their cells.

27. During the lock down the Plaintiff Davis experienced severe depression with feelings of helplessness and doom. She was unable to telephone any family members for assistance. She sought assistance from the guards without success as she was lock down. She then started a fire in her cell. The fire was

9

subsequently extinguished without any assistance from the guards.

28. During the lock down at lunchtime, the guard opened the door so the Plaintiff Davis and her cell mates could receive the food tray. The Plaintiff Davis told the guard she was suicidal and needed professional help. Plaintiff was taken to the receiving area of the Jail where she received a cursory psychological screening.

29. After the screening, Davis was then returned to Division IV, placed back in lock down in the cell and was left unattended, unsupervised and not monitored, despite the Jail's knowledge that she was suicidal.

30. Thereafter, Ms. Davis cried out to the guards for help and their was no response. She then broke a light bulb and slashed her neck on both the left and right side and cut her wrist and breast. After inflicting severe injuries to herself, Plaintiff sat in a pool of blood for a substantial time, before she was taken to Cermak hospital.

31. The Plaintiff Carmen Feliciano is a former inmate at the Cook County Jail.

32. Plaintiff Feliciano has been in the Jail on several times during weekend lock downs.

33. Due to her medical condition, the Plaintiff Feliciano suffers extreme emotional and physical pain and anguish as the result of the weekend lock downs.

34. The Plaintiff Ann Francis Gelco is a former inmate at the Cook County Jail.

35. The Plaintiff Gelco has been in the Jail on several times during weekend lock downs.

36. During her incarceration in May, 2002, Plaintiff Gelco was an inmate at Division IV and she was pregnant. On May 31, 2002 she was subject to a weekend lock down in Division IV. The lock down started on May 31, 2002 (Friday) at 1:30 p.m. and she was confined in a cell with two other inmates until June 2, 2002 (Sunday). During this period, there was no light in the cell. She had no access to the telephone to call her attorney or family members.

37. During the May 2002 weekend lock down, she was confined in a two person cell with three people. One of the cell mates was mentally ill, suicidal, violent and made repeated threats to the Plaintiff Gelco. The suicidal cell mate attempted to strangle herself during the lock down with her socks and the Plaintiff Gelco and the other cell mate screamed for help for approximately 30-45 minutes before any correctional officer responded. During this 30-45 minute time period, the Plaintiff Gelco attempted to stop the suicide and was struck in the jaw and injured in the process. When the correctional officers finally arrived, they removed the suicidal cell mate for approximately 5 hours and then returned that cell mate to the Plaintiffs Gelco's cell for the remainder of the lock down.

38. The Plaintiff Teresa Quintello is a pretrial detainee in Division IV at the Jail. She has been incarcerated at the Jail since September 25, 2001 and has subjected to numerous

monthly prolonged weekend lock downs.

39. The Plaintiff Helen Koss is a pretrial detainee in Division IV at the Jail. She has been incarcerated at the Jail since 2001 and has been subjected to numerous monthly prolonged weekend lock downs.

40. The Plaintiff Koss on or about April, 2002 during a weekend lock down was attacked by her cell mate and was struck numerous times which caused bruises and she had clumps of her hair pulled out of her head. That during the attack, the Plaintiff was yelling for help and no correctional officer responded within a reasonable period of time. That it took approximately 10 minutes for an inmate worker to get the attention of a correctional officer as there was no officer at the interlock station. That the interlock station is always staffed on non lock down days. That when the correctional officer arrived, the officer refused to take Plaintiff Koss to receive medical treatment and told her to wash herself up. At no time thereafter, did the Plaintiff Koss receive medical treatment for her injuries.

41. The Plaintiff Flora Stewart is a pretrial detainee in Division III at the Jail. She has been incarcerated at the Jail since 2001 and has been subjected to numerous monthly prolonged weekend lock downs.

42. The Plaintiff Elena Meitzler is a pretrial detainee in Division IV at the Jail. She has been incarcerated at the Jail since November 8, 2002 and has been subjected to numerous weekend

lock down(s). That on December 21, 2002, during a lock down weekend, the Plaintiff Meitzler was struck by her cell mate and suffered multiple trauma to her body. That during the course of the fight, the cell mate suffered a cut to the eye which was bleeding. The Plaintiff yelled for assistance and no correctional officer intervened for approximately 15-20 minutes. That the correctional officer refused the Plaintiff's and her cell mate's request to receive medical treatment.

### COUNT ONE

43. Plaintiffs reallege paragraphs 1-42 above as paragraphs 1-42 of Count I.

44. At all times relevant to this complaint, the defendant, as Sheriff of Cook County has the duty to establish procedures and policies and to train deputy sheriffs and C.C.D.O.C. employees not to punish pretrial detainees by engaging in non-emergency prolonged lock downs.

45. At all times relevant to this complaint, the defendant, as Sheriff of Cook County has the duty to establish procedures and policies and to train deputy sheriffs and C.C.D.O.C. employees to protect inmates from harm from other inmates.

46. At all times relevant to this complaint, the defendant, as Sheriff of Cook County has the duty to establish procedures and policies and to train deputy sheriffs and C.C.D.O.C. employees to provide appropriate medical and/or psychological treatment to prevent serious medical injuries.

47. At all times relevant to this complaint, the defendant,

as Sheriff of Cook County has the duty to establish procedures and policies and to train deputy sheriffs and C.C.D.O.C. employees to permit the female inmates to be able to communicate with the Jail that they are in need of immediate medical and/or psychological treatment to prevent serious medical injuries.

48. At all times relevant to this complaint, the defendant, as Sheriff of Cook County has the duty to establish procedures and policies and to train deputy sheriffs and C.C.D.O.C. employees not to endanger pretrial detainees by engaging in prolonged lock downs which are abusive and results in injury to the Plaintiffs.

49. At all times relevant to this complaint, the defendant, as Sheriff of Cook County has the duty to establish procedures and policies and to train deputy sheriffs and C.C.D.O.C. employees to permit the Plaintiffs to have access to attorneys and family members to be able to post bond or be released from custody or assist their attorney in locating favorable witnesses or exculpatory evidence.

50. Defendant SHEAHAN knew or should have known that female inmates are subjected to unreasonable non-emergency prolonged lock downs which are abusive and endanger the Plaintiffs, and are carried out by his deputies in an unreasonable and abusive manner and which endanger the Plaintiffs and which serves no legitimate penological purpose and which violates Plaintiffs constitutional rights.

51. Defendant SHEAHAN instituted, sanctioned, and approved the following policies, practices, customs, and procedures

14

regarding the non-emergency prolonged lock downs of female individuals who are in the custody of the Cook County Department of Corrections;

    A. Female pretrial detainees are subjected to weekend lock downs which occur at least once a month.

    B. Although the searches of the Plaintiffs living quarters (Tiers) takes less than forty minutes, the Plaintiffs remain in their cells on lock down, despite the fact that there is no valid reason for this restriction.

    C. The Sheriff fails to protect inmates from harm from other inmates during the lock down.

    D. The Sheriff fails to provide appropriate medical and/or psychological treatment to the Plaintiffs to prevent serious medical injuries during the lock down.

    E. The Defendant's weekend lock down procedure prevents female inmates from being able to communicate with the correctional officers that they are in need of immediate medical and/or psychological treatment.

    F. The Defendant's weekend lock down procedure prevents female inmates from having access to attorneys and family members to post bond or be released from custody or assist their attorney in locating favorable witnesses or exculpatory evidence.

G. The Defendant's weekend lock down procedure and practice is abusive and inflicts punishment upon pretrial detainees.

52. The Sheriff failed to establish appropriate procedures and practices to ensure that female inmates are not subjected to unreasonable lock downs.

53. The Sheriff failed to properly train and supervise the deputy sheriffs and C.C.D.O.C. employees to prevent unreasonable lock downs.

54. The lock downs of plaintiffs under the above describe abusive conditions constitutes deliberate indifference to the rights of the plaintiffs in violation of the Fourth and Fourteenth Amendments to the U.S. Constitution.

55. As a direct and proximate result of the Sheriff's policies, practices and procedures, in his official capacity, the defendant subjected the Plaintiffs and members of the class to unreasonable lock downs which were abusive, dehumanizing, humiliating, terrifying, unpleasant, signifying degradation, submission and punishment.

56. Unless the Defendant is enjoined immediately, preliminary and permanentently enjoined from continuing to subject females inmates to abusive non-emergency weekend lock downs, defendant will continue to engage in the willful, wanton and deliberate violation of the constitutional rights of females, and plaintiffs and members of the class will continue to suffer gross violations of their constitutional rights and gross indignities, each of which

constitutes irreparable injury for which plaintiffs have no adequate remedy at law.

WHEREFORE, plaintiffs PRAY that this Court enter an order:

1. Finding that this action should proceed as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure;

2. Temporarily, Preliminarily and permanently restraining, enjoining and prohibiting defendant from undertaking, enforcing, maintaining or adopting any policies, procedures, practices or acts by which any female inmate is subjected to an abusive non-emergency weekend lock downs.

3. Awarding plaintiffs and the class their costs and attorney's fees under Title 42 U.S.C. Sect. 1988.

## COUNT TWO

57. Plaintiffs reallege paragraphs 1-56 above as paragraphs 1-56 of Count II.

58. As a direct and proximate consequence of the weekend lock downs, Plaintiffs have suffered monetary damages, including but not limited to emotional trauma, physical discomfort, anguish, humiliation, and injury.

WHEREFORE, plaintiffs PRAY that this Court enter an order:

1. Enter an Order certifying the Class pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure and appointing Plaintiffs and their counsel to represent the class;

2. Enter judgment on behalf of Plaintiffs and the Class and against Defendant for monetary damages to be determined at trial;

3. Enter judgment for reasonable attorney's fees and costs incurred in bringing this action;

4. Grant Plaintiffs any and all other relief as law and justice demand.

_____
Plaintiffs' Attorneys


Thomas G. Morrissey, Ltd.
10249 S. Western Ave.
Chicago, Il. 60643
(773)-233-7900


Robert II. Farley, Jr., Ltd.
1155 S. Washington
Naperville, Il. 60540
(630)-369-0103

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Antoinette Davis et al.,

## DEFENDANTS
Michael Sheahan, no Sheriff of Cook County, Cook

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF: Cook
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT: Cook
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Thomas G. Morrissey
10249 S. Western Ave
Chicago, IL 60643

ATTORNEYS (IF KNOWN)

*[Stamps: 03C 1768, DOCKETED MAR 13 2003, JUDGE MANNING, MAGISTRATE JUDGE ASHMAN]*

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| | | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | ☒ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS — Third Party 26 USC 7609 | |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION
(CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

42 U.S.C. 1983

## VII. REQUESTED IN COMPLAINT
☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ 8/costs of $50,000

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ YES ☐ NO

## VIII. This case
☒ is not a refiling of a previously dismissed action.
☐ is a refiling of case number _____, previously dismissed by Judge _____

DATE: 3/11/03

SIGNATURE OF ATTORNEY OF RECORD: *[signature]*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

In the Matter of

Antoinette Davis
vs.
Michael Sheahan

Case Number: **03C 1768**

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

Plaintiff

DOCKETED
MAR 1 3 2003

| (A) | (B) |
|---|---|
| SIGNATURE: [signed] | SIGNATURE: Robert H. Farley |
| NAME: Thomas G. Morrissey | NAME: Robert H. Farley, Jr. |
| FIRM: Thomas G. Morrissey Ltd | FIRM: Robert H. Farley, Ltd |
| STREET ADDRESS: 10249 S Western Ave | STREET ADDRESS: 1155 S Washington |
| CITY/STATE/ZIP: Chicago, IL | CITY/STATE/ZIP: Naperville, IL |
| TELEPHONE: 773-233-7900 | TELEPHONE: 630-369-0103 |
| FAX: 773-299-0387 | FAX: |
| E-MAIL: TGMlaw@Ameritech.net | E-MAIL: |
| ID NUMBER: 12450 | ID NUMBER: |
| MEMBER OF TRIAL BAR? YES ☑ NO ☐ | MEMBER OF TRIAL BAR? YES ☐ NO ☐ |
| TRIAL ATTORNEY? YES ☑ NO ☐ | TRIAL ATTORNEY? YES ☐ NO ☐ |
| | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ |

| (C) | (D) |
|---|---|
| SIGNATURE: | SIGNATURE: |
| NAME: | NAME: |
| FIRM: | FIRM: |
| STREET ADDRESS: | STREET ADDRESS: |
| CITY/STATE/ZIP: | CITY/STATE/ZIP: |
| TELEPHONE: FAX: | TELEPHONE: FAX: |
| E-MAIL: | E-MAIL: |
| ID NUMBER: | ID NUMBER: |
| MEMBER OF TRIAL BAR? YES ☐ NO ☐ | MEMBER OF TRIAL BAR? YES ☐ NO ☐ |
| TRIAL ATTORNEY? YES ☐ NO ☐ | TRIAL ATTORNEY? YES ☐ NO ☐ |
| DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ |