IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

APR 1 4 2003  WF

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| Antoinatte Davis, Carmen Feliciano, | ) | |
| Teresa Quintello, Ann Francis Gelco, | ) | |
| Helen Koss, Flora Stewart, and | ) | |
| Elena Meitzler, individually | ) | |
| and on behalf of a class, | ) | |
| | ) | |
| | ) | |
| Plaintiffs | ) | No.03 C 1768 |
| | ) | |
| vs. | ) | JUDGE: Blanche M. Manning |
| | ) | MAGISTRATE Judge Ashman |
| MICHAEL SHEAHAN, | ) | |
| SHERIFF OF COOK COUNTY, | ) | |
| in his official capacity, | ) | |
| | ) | |
| Defendant | ) | |

**DOCKETED**

APR 1 5 2003

### NOTICE OF FILING

PLEASE TAKE NOTICE that on April 14, 2003, I caused to be filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, the PLAINTIFFS' Amended Complaint

Dated this 14th day of April, 2003.

Respectfully submitted,

One of Plaintiffs' Attorney

Thomas G. Morrissey Ltd.
10249 S. Western Ave.
Chicago, Il 60643
(773) 233-7900

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

FILED

APR 1 4 2003

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| Genise Hart, Carmen Feliciano, | ) | |
| Ann Francis Gelco, Helen Koss | ) | |
| Caprice Morales  and | ) | |
| Michelle Gandy, individually and | ) | |
| and on behalf of a class, | ) | |
| | ) | |
| | ) | |
| Plaintiffs | ) | No. 03 C 1768 |
| | ) | |
| vs. | ) | JUDGE: James Zagel |
| | ) | MAGISTRATE: Ashman |
| MICHAEL SHEAHAN, | ) | |
| SHERIFF OF COOK COUNTY, | ) | |
| in his official capacity, | ) | |
| | ) | |
| Defendant | ) | |

DOCKETE

APR 1 5 200

### AMENDED COMPLAINT

Now comes the Plaintiffs, by and through their attorney, Thomas G. Morrissey, Ltd., and Robert H. Farley, Jr. Ltd.,and complain of the Defendant as follows:

### INTRODUCTION

1.     The Plaintiffs in this case are currently or have been pretrial detainees at the Cook County Department of Corrections ("Jail"). As pretrial detainees at the Jail, the plaintiffs are subjected to weekend lock downs which occur at least once a month. During these lock downs, inmates are confined to their cells  starting a 1:30 p.m. on Friday afternoon and are not released until late on Sunday afternoon.

2.     In this lawsuit, the plaintiffs are not challenging the right of Jail officials to conduct random searches in the

1

living quarters of the Jail and to impose lock downs during emergencies. The plaintiffs are challenging the reasonableness of regular, scheduled lock downs which last up to fifty hours over the weekends and are imposed in a harsh and abusive manner by the Sheriff. These prolonged lock downs serve no justifiable administrative purpose at the Jail and amount to punishment of the pre-trial detainees.

3.   After a tier is searched during a lock down, the inmates remain in their cells on lock down, despite the fact that there is no valid reason for this restriction. Plaintiffs, as representatives of a class are seeking injunctive and monetary relief

## JURISDICTION AND VENUE

4.   Jurisdiction is proper in this court pursuant to 28 U.S.C. Sect. 1331 and 2201, and pursuant to 42 U.S.C. Sect. 1983 and 1988.

5.   Venue is proper in this district pursuant to 28 U.S.C. Sec. 1391 (b), as all the events giving rise to the claims asserted occurred in Cook County.

## CLASS ACTION ALLEGATIONS

6.(a)   Plaintiffs bring this action as a class action pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

(b) The Class consist of the following two classes;

(i)      For injunctive relief under Rule 23(b)(2) the class consist all pretrial female inmates at the Cook County

Department of Corrections who have exhausted their administrative remedies and who have been and/or will  in the future  be subjected to non-emergency, extended lock downs over a weekend at the Jail.

(ii)     For relief under Rule 23(b)(3) the class shall consist of all former female pretrial inmates at the Cook County Department of Corrections who had been  subjected to non-emergency, extended lock downs over a weekend at the Jail and who were not incarcerated on March 11,2003. The class shall also include those inmates who were incarcerated at the time of the filing and who  had exhausted their administrative remedies prior to March 11,2003.

(c) The class is so numerous that joinder of all persons is impracticable. The practice and policy at the Jail is to lock down the female divisions at the Jail. Plaintiffs believe that the class probably numbers well over 10,000 female inmates.

(d)     There are questions of law and fact common to the class. These questions predominate over any questions affecting only individual Class members. These legal and factual questions include:

> (i)  Whether there are prolonged, weekend lock downs each month at the Jail in the female housing units;
>
> (ii) The amount of time required to conduct a complete search of a tier in the female housing divisions;
>
> (iii)Whether prolonged lock downs each month at the

3

Jail are related to a legitimate governmental
interest;

(iv) Whether the Sheriff has a duty during prolonged
weekend lock downs, to protect inmates from harm
from other inmates;

(v) Whether the safety of female inmates is endangered
during the prolonged weekend lock downs;

(vi) Whether during the prolonged weekend lock downs
the plaintiffs are able to receive appropriate
medical and/or psychological treatment to
prevent serious medical injuries;

(vii) Whether the  defendant, as Sheriff of Cook County
has the duty to establish procedures and policies
and to train deputy sheriffs and C.C.D.O.C.
employees not to punish pretrial detainees by
engaging in non-emergency, prolonged lock downs.

(viii) Whether during the prolonged weekend lock downs
the plaintiffs are denied access to pay telephones
to contact their attorneys and/or to contact
relatives for the purpose of posting the required
bond to be released from custody; and

(ix) Whether the prolonged weekend lock downs
constitutes punishment of the plaintiffs;

(e)  Plaintiffs' claims are typical of the claims of the
class.

(f)  Plaintiffs will fairly and adequately protect the

4

interest of all class members as they are members of the class and their claims are typical of the claims of all class members. Each of the plaintiffs is incensed at the treatment accorded the class members and will aggressively pursue the interests of the entire class. Plaintiffs' interest in obtaining injunctive and monetary relief for the violations of constitutional rights and privileges are consistent with and not antagonistic to those of any person within the class. Plaintiffs have retained counsel competent and experienced in complex class action litigation.

(g) This matter is brought as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure because the party opposing the class has acted or refused to act on grounds generally applicable to the class, making appropriate final injunctive relief. The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class.

(h) Additionally, this matter is brought as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, because a class action is superior to other available means for a fair and efficient adjudication of this controversy. The damages suffered by individual class members are small compared to the burden and expense of individual prosecution of the action to address defendant's unconstitutional conduct.

## FACTS AND PARTIES

5

7.    Plaintiff Genise Hart is a citizen of the United States and resident of the State of Illinois. During the period from January 19, 2003, through February 24,2003, Ms. Hart was an inmate in Division Four at the Cook County Department of Corrections awaiting trial. While incarcerated, Ms. Hart was subjected to a weekend lock down.

8.    Plaintiff Carmen Feliciano is a citizen of the United States and resident of the State of Illinois. The Plaintiff Feliciano has been an inmate at the Cook County Department of Corrections on several occasions during the last two years and has been subjected to numerous lock downs. She suffers from bipolar disorder.

9.    Plaintiff Caprice A. Morales is a citizen of the United States and resident of the State of Illinois. The Plaintiff Morales  has been an inmate at the Cook County Department of Corrections on several occasions during the last two years and has been subjected to numerous lock downs while waiting trial.

10.    Plaintiff Ann Francis Gelco is a citizen of the United States and resident of the State of Illinois. She has been an inmate at the Cook County Department of Corrections on several occasions during the last two years and has been subjected to numerous lock downs while waiting trial.

11.    The Plaintiff Helen Koss is a pretrial detainee in Division IV at the Jail. In fall of 2002, Ms. Kos filed a grievance regarding the weekend lock downs at the Jail. She has

6

been incarcerated at the Jail since 2001 and has been subjected
to numerous monthly prolonged weekend lock downs.

12.   The Plaintiff Michelle Gandy was a pretrial detainee
at the Jail in August of 2001.   While a pretrial detainee, Ms.
Gandy was  subjected to a prolonged weekend lock downs.

13.   Defendant MICHAEL SHEAHAN (Sheahan) is an elected
county official whose duties include implementing and executing
policies concerning the operation of the Cook County Jail (Jail)
pursuant to 55 ILCS 5/3-15003. At all times relevant hereto,
Sheahan was acting under color of law.

14.   At the Jail, female inmates are housed in Division
Four and Division Three. Division Four is separated into sixteen
separate units which are commonly called "tiers" at the Jail.
Division Three has only six separate units which are commonly
called "tiers" at the Jail. Each tier has an interlock area which
is staffed by a correctional officer and is the only means of
entering and departing the tier.

15.   Inside each tier, there is a common holding area,
which is called a day room, where inmates receive their meals,
have access to pay phones, a television, and can socialize with
other inmates in the tier.  Each tier has shower stalls, which
are  adjacent to the day room.  The correctional officer is able
to monitor from the interlock all the inmates in the day room to
maintain security and protection for the inmates from fellow
inmates.

16.   In Division three and Division Four,  the cells have

7

solid steel door with a small opening, two bunk beds, a toilet and a sink. Correctional officer can not maintain visual contact with the inmates from the interlock once they are placed inside the cells.

17.    Three or four times each month, teams of approximately five to seven correctional officers enter the tiers and conducts random searches called "shakes" of the cells and the day room for contraband and other unauthorized items. It takes these   correctional officers anywhere from twenty to forty minutes to "shake" a tier. During the "shakes", the inmates are normally outside the tier at recreation.  In this lawsuit, plaintiffs are not contesting the need to conduct periodic "shakes" and emergency lock downs.

18.    In addition to the random "shakes" of the tiers, all pretrial detainees are subjected to weekend lock downs at least once a month. During these lock downs, inmates are confined to their cells starting at 1:30 p.m. on Friday afternoon and are not released until late on Sunday afternoon. During the weekend lock-down, each tier in the division is allegedly  searched for contraband in the same manner as the random "searches" and it takes the correctional staff the same amount of time to conduct these searches.  After a tier is searched, the inmates remain in their cells on lock down, despite the fact that there is no valid reason for this restriction.

19.    During weekend lock downs, pretrial detainees are subjected to harsh and cruel conditions which are more onerous

8

than when inmates are placed in solitary confinement after
breaking a rule at the "Jail".  During lock downs, the "Jail"
shirks its duty to protect inmates from harm from other inmates
by isolating them behind solid steel cell door with either two or
three other detainees.  The conditions of the lock down are
"dungeon" like in that the Plaintiffs can rarely be seen or heard
by the correctional officers through the steel cell door.  During
the lock down, the Plaintiffs are unable to communicate with
correctional officers when they are in need of immediate medical
or psychological treatment or in need of immediate protection
from their cell roommate.

20.    In contrast to solitary confinement where the
detainee is released from her cell for one hour a day to shower,
exercise, and have access to the telephone; during the weekend
lock down, the detainee is neither released from her cell nor
permitted to shower, exercise or have access to a phone to
communicate with their lawyer or family.

21.    Plaintiff Koss, as representatives of a class seeking
only injunctive relief and the other plaintiffs, as
representatives of a class seeking relief under Rule 23 (b)(3),
are not challenging the need to conduct a lock down at the Jail
but rather maintain that the periodic weekend lock downs are
unreasonable because the lock downs are imposed in a harsh and
abusive manner by the Sheriff. The restrictions and  conditions
of the lock down amount to punishment of the pre-trial detainees.

22.    There are no administrative procedures available to the

9

plaintiffs at the Jail to challenge or change the formal policy
of the Sheriff to conduct the weekend lock downs. Under the
existing grievance procedure, there is no authority for any
inmates to contest the weekend lock downs as evidenced by the
fact that the Jail failed to act on Helen Kos's grievance in the
fall of 2002 concerning the lock downs. Inmates are permitted to
initiate some grievances at the Jail by handing  grievances to
the social worker assigned to the Division. The practice and
policy at the Jail is for the social worker to initially review
the grievances and throw away and not process those grievances
which they deem unsuitable such as grievances which concern
official policies at the Jail.

23.   Upon information and belief, numerous female detainees
in addition to Kos, have objected to and filed grievances
concerning  the weekend lock down practice to no avail.

24.   The Plaintiff Genise Hart was a pretrial detainee in
Division Four during the January lock down, (January 24-26,
2003). During the lock down, plaintiff Hart suffered great
emotional distress due to the aforementioned conditions existing
during the lock down. Furthermore, the lock down constituted
punishment.

25.   The Plaintiff Carmen Feliciano is a former inmate at
the Cook County Jail.

26.   Plaintiff Feliciano has been in the Jail on several
times during weekend lock downs.

27.   Due to her medical condition, the Plaintiff Feliciano

suffered extreme emotional and physical pain and anguish as the result of the weekend lock downs.

28. The Plaintiff Ann Francis Gelco is a former inmate at the Cook County Jail.

29. The Plaintiff Gelco has been in the Jail on several times during weekend lock downs.

30. During her incarceration in May, 2002, Plaintiff Gelco was an inmate at Division IV and she was pregnant. On May 31, 2002 the lock down started on a (Friday) at 1:30 p.m. and she was confined in a cell with two other inmates until June 2, 2002 (Sunday). During this period, there was no light in the cell. She had no access to the telephone to call her attorney or family members.

31. During this weekend lock down, Plaintiff Gelco was confined in a two person cell with three people. One of the cell mates was mentally ill, suicidal, violent and made repeated threats to the Plaintiff Gelco. The suicidal cell mate attempted to strangle herself during the lock down with her socks and the Plaintiff Gelco and the other cell mate screamed for help for approximately 30-45 minutes before any correctional officer responded. During this 30-45 minute time period, the Plaintiff Gelco attempted to stop the suicide and was struck in the jaw and injured in the process. When the correctional officers finally arrived, they removed the suicidal cell mate for approximately 5 hours and then returned that cell mate to the Plaintiffs Gelco's cell for the remainder of the lock down.

11

32.    The Plaintiff Helen Koss is a pretrial detainee in Division IV at the Jail.  She has been incarcerated at the Jail since 2001 and has been subjected to numerous monthly prolonged weekend lock downs. Her grievance in regards to lock downs was denied by the defendant.

33.    During a weekend lock down in April of 2002, plaintiff Koss  was attacked by her cell mate and was struck numerous times which caused bruises and she had clumps of her hair pulled out of her head.  During this attack, Ms. Koss was yelling for help and no correctional officer responded within a reasonable period of time. It took approximately 10 minutes for an inmate worker to get the attention of a correctional officer due to the fact that there was no officer at the interlock station. When the correctional officer finally arrived, the officer refused to take Plaintiff Koss to receive medical treatment and told her to wash herself up.  At no time thereafter, did the Plaintiff Koss receive medical treatment for her injuries.

34.    The Plaintiff Caprice Morales was recently  a pretrial detainee in Division Four during the January lock down, (January 24-26, 2003). During the lock down, plaintiff Morales suffered great emotional distress due to the aforementioned conditions existing  during the lock down. Furthermore, the lock down  constituted punishment. The plaintiff has also been a pretrial detainee in Division Three in the summer of 2001 during lock down weekends.

35.    The Plaintiff Michelle Gandy has been pretrial

12

detainee in Division Four during lock downs in August of 2001 and during other lock downs over the last two years. During the lock downs, plaintiff Gandy suffered great emotional distress due to the aforementioned conditions existing  during the lock down.

## COUNT ONE

36.  Plaintiffs reallege paragraphs 1-35 above as paragraphs 1-35 of Count I.

37.  At all times relevant to this complaint, the defendant, as Sheriff of Cook County has the duty to establish procedures and policies and to train deputy sheriffs and C.C.D.O.C. employees not to punish pretrial detainees by engaging in non-emergency prolonged lock downs.

38.  At all times relevant to this complaint, the defendant, as Sheriff of Cook County has the duty to establish procedures and policies and to train deputy sheriffs and C.C.D.O.C. employees to protect inmates from harm from other inmates.

39.  At all times relevant to this complaint, the defendant, as Sheriff of Cook County has the duty to establish procedures and policies and to train deputy sheriffs and C.C.D.O.C. employees to provide appropriate medical and/or psychological treatment to prevent serious medical injuries.

40.  At all times relevant to this complaint, the defendant, as Sheriff of Cook County has the duty to establish procedures and policies and to train deputy sheriffs and C.C.D.O.C. employees to permit the female inmates to be able to communicate with the Jail that they are in need of immediate medical and/or psychological

13

treatment to prevent serious medical injuries.

41.  At all times relevant to this complaint, the defendant, as Sheriff of Cook County has the duty to establish procedures and policies and to train deputy sheriffs and C.C.D.O.C. employees not to endanger pretrial detainees by engaging in prolonged lock downs which are abusive and results in injury to the Plaintiffs.

42.  At all times relevant to this complaint, the defendant, as Sheriff of Cook County has the duty to establish procedures and policies and to train deputy sheriffs and C.C.D.O.C. employees to permit the Plaintiffs to have access to attorneys and family members to be able to post bond or be released from custody or assist their attorney in locating favorable witnesses or exculpatory evidence.

43.  Defendant SHEAHAN  knew or should have known that female inmates are subjected to unreasonable non-emergency prolonged lock downs which are abusive and endanger the Plaintiffs, and are carried out by his deputies in an unreasonable and abusive manner and which endanger the Plaintiffs and which serves no legitimate penological purpose and which violates Plaintiffs constitutional rights.

44.  Defendant SHEAHAN instituted, sanctioned, and approved the following policies, practices, customs, and procedures regarding the non-emergency prolonged lock downs of female individuals who are in the custody of the Cook County Department of Corrections;

A.  Female pretrial detainees are subjected to weekend

14

lock downs which occur at least once a month.

B. Although the searches of the Plaintiffs living quarters (Tiers) takes less than forty minutes, the Plaintiffs remain in their cells on lock down, despite the fact that there is no valid reason for this restriction.

C. The Sheriff fails to protect inmates from harm from other inmates during the lock down.

D. The Sheriff fails to provide appropriate medical and/or psychological treatment to the Plaintiffs to prevent serious medical injuries during the lock down.

E. The Defendant's weekend lock down procedure prevents female inmates from being able to communicate with the correctional officers that they are in need of immediate medical and/or psychological treatment.

F. The Defendant's weekend lock down procedure prevents female inmates from having access to attorneys and family members to post bond or be released from custody or assist their attorney in locating favorable witnesses or exculpatory evidence.

G. The Defendant's weekend lock down procedure and practice is abusive and inflicts punishment upon pretrial detainees.

45. The Sheriff failed to establish appropriate procedures

15

and practices to ensure that female inmates are not subjected to unreasonable lock downs.

46. The Sheriff failed to properly train and supervise the deputy sheriffs and C.C.D.O.C. employees to prevent unreasonable lock downs.

47. The lock downs of plaintiffs under the above describe abusive conditions constitutes deliberate indifference to the rights of the plaintiffs in violation of the Fourth and Fourteenth Amendments to the U.S. Constitution.

48. As a direct and proximate result of the Sheriff's policies, practices and procedures, in his official capacity, the defendant subjected the Plaintiffs and members of the class to unreasonable lock downs which were abusive, dehumanizing, , humiliating, terrifying, unpleasant, signifying degradation, submission and punishment.

49. Unless the Defendant is enjoined immediately, preliminary and permanently enjoined from continuing to subject females inmates to abusive non-emergency weekend lock downs, defendant will continue to engage in the willful, wanton and deliberate violation of the constitutional rights of females, and plaintiffs and members of the class will continue to suffer gross violations of their constitutional rights and gross indignities, each of which constitutes irreparable injury for which plaintiffs have no adequate remedy at law.

WHEREFORE, plaintiffs PRAY that this Court enter an order:

1. Finding that this action should proceed as a class action

pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure;

2.     Temporarily, Preliminarily and permanently restraining, enjoining and prohibiting defendant from undertaking, enforcing, maintaining or adopting any policies, procedures, practices or acts by which any   female inmate is subjected to an abusive non-emergency weekend lock downs.

3.  Awarding plaintiffs and the class their costs and attorney's fees under Title 42 U.S.C. Sect. 1988.

## COUNT TWO

50.  Plaintiffs reallege paragraphs 1-49 above as paragraphs 1-49 of Count II.

51.  As a direct and proximate consequence of the weekend lock downs, Plaintiffs have suffered monetary damages, including but not limited to emotional trauma, physical discomfort, anguish, humiliation, and injury.

WHEREFORE, plaintiffs PRAY that this Court enter an order:

1.   Enter an Order certifying the Class pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure and appointing Plaintiffs and their counsel to represent the class;

2.   Enter judgment on behalf of Plaintiffs and the Class and against Defendant for monetary damages to be determined at trial;

3.   Enter judgment for reasonable attorney's fees and costs incurred in bringing this action;

4.   Grant Plaintiffs any and all other relief as law and justice demand.

17

_____
Plaintiffs' Attorneys


Thomas G. Morrissey, Ltd.
10249 S. Western Ave.
Chicago, Il. 60643
(773)-233-7900


Robert H. Farley, Jr., Ltd.
1155 S. Washington
Naperville, Il. 60540
(630)-369-0103

18

## CERTIFICATE OF SERVICE

I, Robert H. Farley, Jr., an attorney, deposes and states that he served a copy the foregoing

Amended Complaint on parties listed above by either mailing or faxing a copy on or before 5:00

p.m. on April 14, 2003.

Robert H. Farley, Jr.

SERVICE LIST

To: Mr. Steven Puiszis
Hinshaw & Culbertson
222 N. LaSalle Street, Suite 300
Chicago, Il. 60601-1081


Mr. Patrick T. Driscoll, Jr.
Civil Bureau Chief
Office of the State's Attorneys
500 Richard J. Daley Center
Chicago, IL 60602