Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 1768 | **DATE** | 12/18/2003 |
| **CASE TITLE** | Hart, et al. vs. Sheahan, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due ___ ___.
(3) ☐ Answer brief to motion due___ ___. Reply to answer brief due ___ ___.
(4) ☐ Ruling/Hearing on ___ ___ set for ___ ___ at ___ ___.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on ___ ___ set for ___ ___ at ___ ___.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ___ ___ set for ___ ___ at ___ ___.
(7) ☐ Trial[set for/re-set for] on ___ ___ at ___ ___.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to ___ ___ at ___ ___.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
 ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER. Defendant's motion to dismiss is granted. All other pending motions are denied as moot.

✓ Docketing to mail notices.
✓ Mail AO 450 form.
☐ Copy to judge/magistrate judge.

JD courtroom deputy's initials

DEC 19 2003

Date/time received in Central Clerk's Office

35

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED

DEC 19 2003

GENISE HART, CARMEN FELICIANO,
ANN FRANCIS GELCO, KELEN KOSS,
CAPRICE MORALES, and MICHELLE
GRANDY, individually and on behalf of a
class,

Plaintiffs,

v.

MICHAEL SHEAHAN, SHERIFF OF
COOK COUNTY, in his official capacity,

Defendant.

No. 03 C 1768
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

**Background**

Plaintiffs Genise Hart, Carmen Feliciano, Ann Francis Gelco, Helen Koss, Caprice Morales, and Michelle Grandy are current and former pretrial detainees at the Cook County Jail ("CCDOC") who claim that weekend lockdown searches violate their due process rights. They are seeking both monetary and injunctive relief. The Plaintiffs allege the following facts.

While at the CCDOC, female detainees are housed in two divisions. Each division is divided into tiers. Inside each tier, there is a common holding area called the day room where the detainees receive their meals and have access to pay phones, a television, and other detainees. Each tier has shower stalls adjacent to the day room. The detainees' cells are separated from the day room by solid steel doors with a small opening. During the day, detainees are allowed to come and go freely between the day room, shower stalls, and their cells unless they are under lockdown conditions. When under a lockdown, inmates must remain in their cells.



Detainees at the CCDOC are subjected to frequent random searches for weapons and other contraband. It takes the correctional officers between twenty and forty minutes to complete these random searches during which time the detainees are on lockdown. The detainees are also subjected to monthly weekend lockdown searches. During the weekend lockdown searches, the detainees are confined to their cells from 1:30 p.m. on Friday afternoon to late Sunday afternoon. It takes the CCDOC officers approximately the same amount of time to search each tier during the random searches and the weekend lockdown searches.

Many of the detainees, including plaintiff Koss, have filed formal grievances about the weekend lockdown searches. At the CCDOC, supervisors from the housing division periodically collect written grievances from the grievance box and forward them to a caseworker who classifies them either as active grievances or as requests. A request falls outside the CCDOC's administrative process. It is the practice of the caseworkers to classify all grievances about the weekend lockdown searches as requests instead of as active grievances.

Koss filed a brief written grievance on December 16, 2002 stating "I would like to know what can be done about lockdown weekends. I feel it is unconstitutional and unfair." Koss also requested the "stopping of lockdowns." Koss received no response to her grievance. Under the now existing administrative grievance procedure, detainees may take their grievance to the appeals panel if they do not receive a decision within five business days. According to Charles Fasano, the Director of the John Howard Association, who serves a grievance process monitor, the appeals board did not exist in 2002.

**Analysis**

The Defendant, Michael Sheahan, Sheriff of Cook County, now moves to dismiss this Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss under Rule 12(b)(6) is proper where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In reviewing a motion to dismiss, the court must construe all allegations in the complaint in the light most favorable to the plaintiff and accept all well-pled facts and allegations as true. *Bontkowski v. First Nat'l Bank*, 998 F.2d 459, 461 (7th Cir. 1993).

Before I get to the heart of Defendant's arguments, I must deal with two preliminary issues, standing and the proper constitutional basis for the Plaintiffs' claims. The named Plaintiffs are a mix of current and former pretrial detainees at the CCDOC seeking both injunctive and monetary relief. However, the relief to which these Plaintiffs are entitled depends on their detainee status. To be entitled to injunctive relief, a plaintiff must show that he is in imminent danger of harm. *Robinson v. Chicago*, 868 F.2d 959, 956 (7th Cir. 1989)(citing *Los Angeles v. Lyons*, 461 U.S. 95 (1983)). Only Plaintiffs who are current detainees are in any danger of being subjected to weekend lockdown searches and, therefore, are the only Plaintiffs who have standing to pursue injunctive relief. The former pretrial detainees do not (and probably cannot) allege that it is reasonably likely they will again be arrested, charged, and held as pretrial detainees at the CCDOC. *Id.* It appears from the Complaint that Koss is the only named plaintiff currently detained at the CCDOC. Therefore, she is the only plaintiff who may seek injunctive relief.

As for monetary relief, only current pretrial detainees who have suffered constitutional injury are entitled to monetary damages. *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). Under the Prisoners Litigation Reform Act ("PLRA"), I must dismiss any claims that "seek monetary relief from a defendant immune from such relief." 42 U.S.C.S. § 1997e(c)(1). Thus, the current detainees' right to sue for monetary relief depends on whether they have properly alleged that the Defendant has, through unconstitutional practices and/or policies violated, their due process rights. I find that Plaintiffs' claims of punishment create a proper basis for this suit and that monetary damages may be sought by both current and former detainees.

The Plaintiffs' claims should be analyzed under the Due Process Clause of the Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 536 (1979). Originally, Plaintiffs claimed that weekend lockdown searches violate their Fourth Amendment due process rights but they have subsequently amended their Complaint to allege a violation of Fourteenth Amendment due process.

That being said, I turn to the heart of Defendant's Motion to Dismiss. The Defendant argues that Plaintiffs' claims fail because (1) plaintiff Koss did not exhaust her administrative remedies and is barred from filing suit, and (2) the weekend lockdown searches do not, under any possible standard, violate the Plaintiffs' due process rights.

**1. Exhaustion of Administrative Remedies**

The Defendant argues that Koss is barred by the PLRA from bringing this suit. The PLRA requires prisoners to exhaust all administrative remedies before filing suit.[1] 42 U.S.C.S. §

---

[1] According to the PLRA, the term prisoner includes any person detained in a facility who is accused of violating a criminal law. The PLRA applies to those plaintiffs who were prisoners at the time they filed suit. *Kerr v. Puckett*, 138 F.3d 321, 323 (7th Cir. 1998). Koss was the only

4

1997e(a). On December 16, 2002, Koss placed a grievance concerning the weekend lockdown searches in the grievance box but did not receive a response or pursue her grievance further. The Defendant argues that Koss's claims are barred because she did not appeal her initial grievance. In fact, the Seventh Circuit has held that "to exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F. 3d 1022, 1025 (7th Cir. 2002). Plaintiffs, however, argue that an exception to the requirement of appeal exists for unanswered grievances. After *Pozo*, the Seventh Circuit found "administrative remedies exhausted when prison officials fail to respond to inmate grievances because those remedies had become "unavailable"." *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002)(citation omitted).

In *Lewis*, the plaintiff filed three grievances; prison officials denied one grievance but made no response to the others. *Lewis*, 300 U.S. at 833. The Seventh Circuit relied on its decision in *Pozo* and dismissed claims related to Lewis's unappealed, denied grievance for failure to exhaust administrative remedies. *Id.* Even in light of *Pozo*, which the Defendant argues demands dismissal of this case, the Seventh Circuit allowed Lewis to bring claims based on his unanswered grievances." *Id.* The court refused to read the PLRA "so narrowly as to...permit [prison officials] to exploit the exhaustion requirement through indefinite delay in responding to grievances. *Id.* (quotation omitted). *See Also Goodman v. Carter*, No. 00-948, 2001 U.S. Dist. LEXIS 9213, at *10 (N.D. Ill., June 29, 2001); *Whitmore v. Officer Hurley*, No. 00-7879, 2002 U.S. Dist. LEXIS 16352, at *14 (N.D. Ill., Aug. 29, 2002).

---

plaintiff detained when the suit was filed and the only plaintiff to whom the PLRA applies.

I find that the Seventh Circuit's holding, in *Lewis*, supports my decision in *Whitmore*, a case that addressed issues almost identical to the ones here. Like Koss, Whitmore filed a grievance with the CCDOC, received no response, and failed to appeal. *Whitmore* No. 00-7879, 2002 U.S. Dist. LEXIS 16352, at *11. In that case, I found Whitmore need not appeal an unanswered grievance to sufficiently exhaust his administrative remedies. *Id.* Similarly, I find that Koss has exhausted her administrative remedies and, therefore, her claims are not barred by the PLRA.[2]

The Defendant argues further that Koss's complaint should be dismissed because her "skeletal" grievance was insufficient to place jail officials on notice of her claims. Koss submitted a grievance stating "I would like to know what can be done about lockdown weekends. I feel it is unconstitutional and unfair." Koss also requested the "stopping of lockdowns." In the absence of any regulation issued by the state, the correctional system, or the individual institution prescribing the contents of a grievance, the grievance

> suffices if it alerts the prison to the nature of the wrong for which redress is sought. As in a notice-pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming.

*Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002).

I find Koss has satisfied the standard set out in *Strong*. Koss stated her constitutional rights were violated by the weekend lockdown searches and asked that they be stopped. Her grievance

---

[2]Plaintiff also argues that an appeal was unavailable to Koss because the Grievance Appeal Board did not exist when her claim was filed in 2002. If true, this is also grounds for finding that Koss did exhaust all available administrative remedies.

should have put the CCDOC officials on notice of a possible constitutional objection to weekend lockdown searches.

Plaintiffs also argue that the PLRA does not apply because detainees did not have access to the grievance process. According to the Plaintiffs, caseworkers reclassify grievances concerning weekend lockdown searches as requests taking them out of the administrative process. Plaintiffs allege that this practice makes administrative review unavailable for grievances concerning the weekend lockdown searches. Ultimately, I find this argument unpersuasive. It is essentially a futility argument, an argument explicitly rejected by the 7th Circuit. There exists at the CCDOC a process by which detainees may make formal grievance about CCDOC policies. A detainee may not bypass this administrative process just because he believes it is futile. *Perez v. Wisconsin DOC*, 182 F.3d 532, 534-36 (7th Cir. 1999); *See also Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 2002)(The potential effectiveness of an administrative response bears no relationship to the statutory requirement that prisoners first attempt to obtain relief through administrative procedures.).

### 2. Violation of Fourteenth Amendment Due Process

Much of Defendant's motion focuses on establishing the proper standard of review under the Fourteenth Amendment. It is widely understood that due process prohibits the government from punishing pretrial detainees. *Bell*, 441 U.S. at 531; *Tesch v. County of Green Lake*, 157 F.3d 465, 473 (7th Cir. 1998). In the Seventh Circuit, two lines of detainee due process cases have developed. The first line applies to constitutional challenges based on general practices, rules, and restrictions and the second line applies to constitutional challenges based on denial of basic human necessities. *Tesch v. County of Green Lake*, 157 F.3d at 474.

For cases that challenge general practices, rules, and restrictions, the Seventh Circuit has applied the *Bell* standard. In *Bell*, pretrial detainees challenged the prison's policy of housing two inmates in each cell. *Bell*, 441 U.S. at 530. The Court developed the following standard:

> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]....Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment. Conversely, if a restriction or condition is not reasonably related to a legitimate goal– if it is arbitrary or purposeless– a court permissibly may infer that the purpose of the governmental action is punishment.

*Id.* at 538-539.

In cases dealing with deprivation of basic human necessities, the Seventh Circuit has required plaintiffs to establish that officials acted in an intentional or criminally reckless manner, which amounted to deliberate indifference. *Tesch*, 157 F.3d at 474. This deliberate indifference standard was previously applied to a due process challenge of lockdowns at the CCDOC. *Antonelli v. Sheahan*, 81 F.3d 1422 (7th Cir. 1996). In *Antonelli*, the Seventh Circuit found CCDOC officials did not act with deliberate indifference and that periodic lockdowns did not violate due process.[3] *Id.* at 1430. Defendant urges me to apply *Antonelli's* ruling here and find the weekend lockdown searches also do not violate due process.

---

[3]Defendant argues there is no constitutional basis for Plaintiffs' claims that because of the weekend lockdown searches they lacked use of showers, access to medical care, ability to exercise, use of phones, and freedom of movement outside their cells. However, Plaintiffs are not claiming that these resulting conditions are themselves due process violations. They are claiming that the overall policy amounts to punishment, and I address their claims on those grounds.

However, the Plaintiffs are different from *Antonelli* in that they do not argue weekend lockdown searches themselves violate due process. They argue instead that the general practice /policy of having weekend lockdown searches amounts to punishment and that punishment violates due process. Since the Plaintiffs allege that the general practice of weekend lockdown searches amounts to punishment, I find that the *Bell* standard applies[4].

Because the Plaintiffs have not alleged or shown any evidence that CCDOC officials expressed an intent to punish, this inquiry turns on whether there is a legitimate penological basis for weekend lockdown searches and whether they are excessive in light of that basis. *Bell*, 441 U.S. at 530; *Tesch*, 157 F.3d at 474. Before continuing, I must also note that *Bell* strongly admonishes courts against setting prison policies. Specifically, the Court has stated:

> problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions. Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.

*Bell*, 441 U.S. at 547; *See Also Godinez v. Lane*, 733 F.2d 1250, 1261 (7th Cir. 1984).

The first consideration of the *Bell* standard is whether there is a legitimate penological basis for performing weekend lockdown searches. Defendant and Plaintiffs seem to agree that the purpose of these searches is to find weapons and other contraband. The CCDOC officials have a legitimate interest in ensuring safety and order in the CCDOC. *Bell*, 441 U.S. at 540. Since the safety of both detainees and CCDOC officers is threatened by detainees who possess

---

[4]Defendant also argues that the "atypical hardship" standard established in *Theilman v. Leean*, 282 F.3d 478, 482 (7th Cir. 2002) should apply. I disagree. *Theilman* dealt with a state law that created a due process right. We are dealing with no such law here. Additionally, the plaintiff in *Theilman* was a person who had been involuntarily committed, not a pretrial detainee.

9

weapons and other contraband, I find that weekend lockdown searches serve a legitimate purpose completely unrelated to punishment.

Plaintiffs' argument seems to rest on the *Bell* standard's second inquiry – whether the restriction is excessive in light of its purpose. During the weekend lockdown searches, detainees are confined to their cells from Friday afternoon until Sunday afternoon. Most cells contain three detainees and are shut off from the day room by a metal door with only a small window. While confined to their cells, detainees lack access to showers and telephones. Plaintiffs also claim their safety is endangered because they cannot be properly supervised by the guards and because they lack immediate access to medical care. According to the Plaintiffs, the conditions imposed by the weekend lockdown searches are worse than those in solitary confinement.

The Plaintiffs argue that these excessively severe conditions are not reasonable in light of the weekend lockdown searches' purpose of discovering and confiscating weapons and other contraband. Plaintiffs claim that the weekend lockdown searches could be completed in roughly 45 minutes, the time it takes for prison officials to conduct random tier searches making the weekend confinement unnecessary.

Underlying this case is the inference that the weekend lockdown searches are more onerous than weekday searches because it is less costly to do weekend searches this way. It may be that there are fewer correctional officers available on weekends or that the weekend searches simply take a greater number of resources.[5] The annals of prisoner litigation are filled with cases

---

[5] The facts of the matter are unknown at a motion to dismiss. Weekend staffing at correctional institutions varies widely. Basic human necessities are the same every day of the week but the need for and availability of other services varies widely. Jails customarily have to get inmates to and from court on weekdays and penitentiaries do not. Jails usually offer a limited menu of rehabilitative programs, penitentiaries often offer more of them. Non-essential services also vary widely on weekends.

10

where prisoners have asked the court to order improvements in their living conditions. Often these requests are quite reasonable ranging from better, healthier food to better telephone services. Leaving aside conditions which are essential to maintenance of life and health, courts allow very wide discretion to correctional administrators.

In simple terms, the relevant question here is whether it is permissible, absent intent to punish, to keep prisoners from telephones, television, showers and movement outside the cells for forty-eight hours even if the correctional purposes of the procedure[6] could be achieved without such a lengthy denial of access. The answer to the question is implicit in the vast majority of decided cases in which prisoners have asserted that prison practices could be improved if the government were willing and able to spend more. Such cases include *Bell v. Wolfish*, the cases before it, and after it.

The conditions created by the weekend lockdown searches may be extremely unpleasant, but that does not necessarily make them punishment. *Bell*, 441 U.S. at 537. Plaintiffs' argument that the searches could be performed faster and that detainees could then be immediately released from their cells boils down to an efficiency argument–the CCDOC could do the searches in a better and less restrictive manner. This is exactly the kind of managerial argument that both the Supreme Court and the Seventh Circuit have cautioned against.

> Less restrictive arguments are too powerful: a prison always can do something, at some cost, to make prisons more habitable, but if courts assess and compare these costs and benefits then judges rather than wardens are the real prison administrators.

*Johnson v. Phelan,* 69 F.3d 144, 145 (7th Cir. 1995).

---

[6]There is no dispute here that the searches of cells and inmates for weapons and contraband is a legitimate purpose.

The CCDOC's administrators and officials argue that both random searches and weekend lockdown searches are necessary to decrease the risks posed by weapons and contraband. Since I do not wish to either second guess their judgment or try to tell them the best way to operate a prison, I find that, in light of the need to ensure security at the CCDOC, weekend searches are neither unreasonable nor excessive. The CCDOC's policy of conducting weekend lockdown searches is permissible under the *Bell* standard and does not violate the Plaintiffs' due process rights.

For these reasons, the Defendant's Motion to Dismiss is GRANTED.

ENTER:

James B. Zagel
United States District Judge

DATE: 18 December 2003