

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| Genise Hart, Carmen Feliciano,<br>Ann Francis Gelco, Helen Koss<br>Caprice Morales  and<br>Michelle Gandy, individually and<br>and on behalf of a class, | ) )<br>) )<br>) )<br>) )<br>) )<br>)<br>) | |
| Plaintiffs | ) )<br>) | No. 03 C 1768 |
| vs. | )<br>) | JUDGE: James Zagel<br>MAGISTRATE: Ashman |
| MICHAEL SHEAHAN,<br>SHERIFF OF COOK COUNTY,<br>in his official capacity, and<br>Cook County | )<br>)<br>)<br>) | |
| Defendant | ) | |

**FILED**
JUL - 6 2005
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

### NOTICE OF FILING

To: See Service List

PLEASE TAKE NOTICE that on July 6, 2005, I filed with the United States District Court for the Northern District of Illinois, Eastern Division, a **FOURTH AMENDED COMPLAINT**.

Dated this 6th Day of July, 2005 at Chicago, Illinois.

Respectfully submitted,

Plaintiffs' Counsels

1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

Genise Hart, Carmen Feliciano,        )
Ann Francis Gelco, Helen Koss         )
Caprice Morales  and                  )
Michelle Gandy, individually and      )
and on behalf of a class,             )
                                      )
                                      )
                    Plaintiffs,       )        No. 03 C 1768
                                      )
        vs.                           )        JUDGE: James Zagel
                                      )        MAGISTRATE: Ashman
MICHAEL SHEAHAN,                      )
SHERIFF OF COOK COUNTY,               )
in his official capacity, and         )
Cook County                           )
                    Defendant.        )

**FILED**
JUL - 6 2005
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**FOURTH AMENDED COMPLAINT**

Now comes the Plaintiffs, by and through their attorneys, Thomas G. Morrisey, Ltd., and

Robert H. Farley, Jr., Ltd., and pursuant to the District Court's Order of June 27, 2005, present

the following fourth amended complaint.

**INTRODUCTION**

1.    At the time the initial complaint was filed, plaintiffs were current or former pretrial

detainees at the Cook County Department of Corrections ("Jail"). The plaintiffs complain that

the continuation of the lock downs by the defendants, after the plaintiffs' tiers had been searched,

exposed them to "gratuitously severe restraints and hazards," which amounted to "gratuitous

infliction of pain or suffering," a substantive due process violation. Secondly, the plaintiffs

complain that the defendants failed to protect them from attacks by cell mates as well as a failure

to provide needed medical and psychological treatment, thereby "gratuitously exposing them to dangerous and degrading conditions which deprived them of their liberty without due process of law, thus violating the *Fourteenth Amendment*. They seek an injunction and damages." *Hart* at 889.

2. As pretrial detainees at the Jail, the plaintiffs are subjected to weekend lock downs which occur at least once a month. During these lock downs, inmates are confined to their cells starting at 1:30 p.m. on Friday afternoon and are not released until late on Sunday afternoon, despite the fact that the search of their respective tiers is completed prior to this time.

3. In this lawsuit, the plaintiffs are challenging the reasonableness of these regular, scheduled lock downs which last up to fifty hours over the weekends. The continuation of the lock downs after the individual plaintiffs' tiers have been searched is unreasonable because each tier has an interlock area which is suppose to be staffed by a correctional officer and it is the only means of entering or departing the tier. "[O]nce a tier has been searched there is no apparent reason why the inmates can't be let out of their cells." *Hart* at p. 893. However, the defendants continued the lock down after individual tiers had been searched and subjected the plaintiffs to the "gratuitously severe restraints" of a lock down alongside the corresponding harsh treatment. These prolonged lock downs serve no justifiable administrative purpose at the Jail and amount to punishment of the pre-trial detainees.

4. Division Three of the Jail houses women with special medical needs including but not limited to inmates with severe mental illnesses, women in need of prenatal care;, women in need of medical care, and women being treated for substance abuse.

5. During the lock downs, the Jail fails to provide medical and/or psychological care to female inmates with obvious medical and psychological needs.

6. After a tier is searched during a lock down, the inmates remain in their cells on lock down, despite the fact that there is no valid reason for this restriction. The practice in Division Three is to search a majority of the tiers at the start of the lock down on Friday afternoons. Plaintiffs present the following specific allegations in regards to this practice:

A. On Friday, January 17, 2003, beginning with the 3:00 p.m. to 11:00 p.m. shift, a weekend lock down began in Division 3 at the Cook County Department of Corrections ("Jail").

B. Division 3 maintains the Officer's Living Unit Logs for each shift, which includes the time inmates are detained inside their cells ("time doors are locked") and when the inmates are not permitted access to use the day room in the tier.

C. Tier B-1 is on the first floor of Division 3. The Living Unit Logs for this tier reflect that the doors remained locked from 1:45 p.m. on Friday, January 17, 2003 through 4:45 p.m. on Sunday, January 19, 2003.

D. On January 19, 2003, Lt. Zerbes was the Watch Commander for Division 3/8 on the 1500-2300 shift. At approximately 1639 hours on that day, Lt. Zerbes issued an order ending the weekend lock down.

E. On Friday, December 20, 2002, Division 3 went on a lock down weekend starting with the 1500-2300 shift.

F. During the 1500-2300 shift on December 20, 2002 in Division 3, tiers A-1, B-1, A-2, and B-2 were searched.

G. On Sunday, December 22, 2002, Lt. Zerbes was the Watch Commander for Division 3/8 for the 1500-2300 shift. At approximately 1720 hours, Lt. Zerbes

3

issued an order ending the weekend lock down.

H.    Tier A-2 is on the second  floor of Division 3. The Living Unit Logs for this tier reflect that the doors remained locked from 1500 hours on December 20, 2002 through 1700 hours on December 22, 2002.

I.    After the first and second floor tiers in Division 3 were searched on Friday December 20, 2002,  the inmates continued to remain on lock down in these tiers until the afternoon of December 22, 2002.

J.    On Friday, July 12, 2002, Division 3 began a weekend lock down starting with the 1500-2300 shift.

K.    During the 1500-2300 shift on July 12, 2002 in Division 3, tiers A- 3, B-3, A-2 and B-2 were searched.

L.    On Saturday, July 13, 2002, during the 1500-2300 shift in Division 3, tier A-1 and B-1 were searched.

M.    After tiers A-1 and B-1 were searched on Saturday, July 13, 2002, Division 3 remained on lock down until Sunday afternoon on July 14, 2002.

N.    On July 14, 2002 during the 1500-2300 shift, Joyce Owens # 20010098972, an inmate in a tier in Division Three  "threatened to kill herself if [officers] didn't let her out of the cell."

O.    At approximately 2:15 a.m. on July 15,2002, Joyce Owens cut her wrist.

P.    Tier B-2 is on the second floor of Division 3. The Living Unit Logs for this tier  reflect that the doors remained locked from 1:30 p.m. on Friday, July 12, 2002 through 6:59 p.m. on Sunday, July 14, 2002.

4

Plaintiffs, as representatives of a class are seeking injunctive and monetary relief.

## JURISDICTION AND VENUE

7.     Jurisdiction is proper in this court pursuant to 28 U.S.C. Sect. 1331 and 2201, and pursuant to 42 U.S.C. Sect. 1983 and 1988.

8.     Venue is proper in this district pursuant to 28 U.S.C. Sec. 1391 (b), as all the events giving rise to the claims asserted occurred in Cook County.

## CLASS ACTION ALLEGATIONS

9.     (a) Plaintiffs bring this action as a class action pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

(b) The Class consist of the following two classes:

(i) For injunctive relief under Rule 23(b)(2) the class consists of all pretrial female inmates at the Cook County Department of Corrections who have exhausted the available administrative remedies and who have been and/or will in the future be subjected to non-emergency, extended lock downs over a weekend after their tiers have been searched at the Jail.

(ii) For relief under Rule 23(b)(3) the class shall consist of all former female pretrial inmates at the Cook County Department of Corrections who had been subjected to non-emergency, extended lock downs over a weekend after their tier had been searched  at the Jail and who were not incarcerated on March 11,

5

2003. The class shall also include those inmates who were incarcerated at the time of the filing and who had exhausted their available administrative remedies prior to March 11, 2003.

(c) The class is so numerous that joinder of all persons is impracticable. The practice and policy at the Jail is to lock down the female divisions at the Jail over weekends and to continue the lock downs after their tiers have been searched. Plaintiffs believe that the class probably numbers well over 10,000 female inmates.

(d)   There are questions of law and fact common to the class. These questions predominate over any questions affecting only individual Class members. These legal and factual questions include:

(i) Whether there are  weekend lock downs which continue and are prolonged after each tier has been searched;

(ii) Whether the continuation and prolonging of weekend lock downs after each tier has been searched is  related to legitimate governmental interest;

(iii) Whether the Sheriff has a duty during prolonged weekend lock downs, to protect inmates from harm from other inmates;

(iv) Whether the continuation and prolonging  of the lock downs by the defendants after a tier has been searched, exposes pretrial detainees to unreasonable and "gratuitous infliction of pain or suffering;"

 (v) Whether the safety of female inmates is endangered during the prolonged weekend lock downs;

(vi) Whether during the prolonged weekend lock downs the plaintiffs are able to

6

receive appropriate medical and/or psychological treatment to prevent serious
medical injuries;

(vii) Whether the weekend lock downs which continue after a tier is searched
constitute punishment of pretrial detainees.

(e) Plaintiffs' claims are typical of the claims of the class.

(f) Plaintiffs will fairly and adequately protect the interest of all class members as
they are members of the class and their claims are typical of the claims of all class
members. Each of the plaintiffs is incensed at the treatment accorded the class members
and will aggressively pursue the interests of the entire class. Plaintiffs' interest in
obtaining injunctive and monetary relief for the violations of constitutional rights and
privileges are consistent with and not antagonistic to those of any person within the class.
Plaintiffs have retained counsel competent and experienced in complex class action
litigation.

(g) This matter is brought as a class action pursuant to Rule 23(b)(2) of the
Federal Rules of Civil Procedure because the party opposing the class has acted or
refused to act on grounds generally applicable to the class, making appropriate final
injunctive relief. The prosecution of separate actions by individual members of the class
would create a risk of inconsistent or varying adjudications with respect to individual
members of the class which would establish incompatible standards of conduct for the
party opposing the class.

(h) Additionally, this matter is brought as a class action pursuant to Rule 23(b)(3)
of the Federal Rules of Civil Procedure, because a class action is superior to other

7

available means for a fair and efficient adjudication of this controversy. The damages

suffered by individual class members are small compared to the burden and expense of

individual prosecution of the action to address defendant's unconstitutional conduct.

## FACTS AND PARTIES

10. Plaintiff Genise Hart is a citizen of the United States and resident of the State of

Illinois. During the period from January 19, 2003, through February 24,2003, Ms. Hart was an

inmate in Division Four at the Cook County Department of Corrections awaiting trial. While

incarcerated, Ms. Hart was subjected to a weekend lock down which continued for substantial

period after her tier was searched.

11. Plaintiff Carmen Feliciano is a citizen of the United States and resident of the State

of Illinois. The Plaintiff Feliciano has been an inmate at the Cook County Department of

Corrections on several occasions during the last two years and has been subjected to numerous

lock downs in both Division Three and Four which continued for substantial periods after her tier

was searched. She suffers from bi-polar disorder, and is on psychotropic medication. During the

lock downs, Ms. Feliciano has experienced periods during the lock downs of extreme anxiety,

depression which have been exasperated by the lock down conditions  and the denial of her

medication.

12. Plaintiff Caprice A. Morales is a citizen of the United States and resident of the State

of Illinois. The Plaintiff Morales  has been an inmate at the Cook County Department of

Corrections on several occasions during the last two years in Division Three and Division Four

and has been subjected to numerous lock downs while waiting trial which continued for

8

substantial periods after her tier was searched. During period when she was in Division Three, she was pregnant and was denied prenatal care.

13.   Plaintiff Ann Francis Gelco is a citizen of the United States and resident of the State of Illinois. She has been an inmate at the Cook County Department of Corrections on several occasions during the last two years and has been subjected to numerous lock downs while waiting trial in Division Three and Four which continued for substantial periods after her tier was searched. Plaintiff suffers from a long standing  mental illness which is treated with psychotropic medication. During a lock down in Division Three, the plaintiff  was pregnant and was not provide with prenatal care or her medication for her mental illness.  This caused her to become depressed, anxious and gave rise to suicidal thoughts.

14.   At the time the complaint was filed, plaintiff Helen Koss was a pretrial detainee in Division IV at the Jail.  On December 16,2002, Ms. Kos filed a grievance regarding the weekend lock downs at the Jail.  She has been incarcerated at the Jail since 2001 and has been subjected to numerous monthly prolonged weekend lock downs in Division Three and Division Four which continued for substantial periods after her tier was searched.  During one lock down in Division Three, plaintiff received a black eye, busted lip, bloody nose and some of her hair was pulled out.  She was denied any medical treatment from the correction officers.  During a subsequent lock down in Division Three, plaintiff was pregnant and  experienced labor pains.  During a third lock down, a cell mate went into labor, and because there were no guards on duty to call for assistance, the plaintiff assisted in the delivery of the child.

15.   Plaintiff Michelle Gandy was a pretrial detainee  at the Jail in August of 2001.  While a pretrial detainee, Ms. Gandy was  subjected to a prolonged weekend lock downs, which

9

continued for substantial periods of time after her tier was searched.

16.    Defendant MICHAEL SHEAHAN (Sheahan) is an elected county official whose duties include implementing and executing policies concerning the operation of the Cook County Jail (Jail) pursuant to 55 ILCS 5/3-15003. At all times relevant hereto, Sheahan was acting under color of law.

17.    Defendant Cook County, under Illinois law, funds the Office of the defendant Sheriff, and is therefore required to pay a judgment entered against a sheriff's office in an official capacity.

18.    At the Jail, female inmates are housed in Division Four and Division Three. Division Four is separated into sixteen separate units which are commonly called "tiers" at the Jail. Each tier has an interlock area which is staffed by a correctional officer and is the only means of entering and departing the tier.

19.    Division Three  has only six separate units.  There are three levels in Division Three, and each floor has two tiers which are separated by a monitoring station.  It is impossible for an inmate to pass contraband between tiers on the same floor in Division Three.

20.    Inmates who are in need of medical and/or psychological treatment are assigned to Division Three. Many of the women are pregnant and/or suffer from severe mental illness. Division Three has one of the highest ratios of correctional officers to inmates at the Cook County Jail.

21.    Inside each tier, there is a common holding area, which is called a day room, where inmates receive their meals, have access to pay phones, a television, and can socialize with other inmates in the tier. Each tier also has shower stalls, which are  adjacent to the day room. The

correctional officer is capable of monitoring all of the inmates in the day room from the interlock in order to maintain security and protect inmates from fellow inmates.

22. In Division Three and Four, the cells have a solid steel door with a small opening, two bunk beds, a toilet and a sink. Correctional officers cannot maintain visual contact with the inmates from the interlock once they are placed inside the cells.

23. Three or four times each month, teams of approximately five to seven correctional officers enter the tiers and conducts random searches ("shakes") of the cells and day room for contraband and other unauthorized items. It takes these correctional officers anywhere from twenty to forty minutes to "shake" a tier. During the "shakes", the inmates are normally placed outside the tier at recreation. In this lawsuit, plaintiffs are not contesting the need to conduct periodic "shakes" and emergency lock downs.

24. In addition to the random "shakes" of the tiers, all pretrial detainees are subjected to weekend lock downs at least once a month. During these lock downs, inmates are confined to their cells starting at 1:30 p.m. on Friday afternoon and are not released until late on Sunday afternoon. During the weekend lock-down, each tier in the division is allegedly searched for contraband in the same manner as the random "shakes" and it takes the correctional staff the same amount of time to conduct these searches. After a tier is searched, the inmates remain in their cells on lock down, despite the fact that there is no valid or legitimate reason for this restriction.

25. After a tier has been searched during weekend lock downs, pretrial detainees are unreasonably subjected to harsh and cruel conditions which are more onerous than when inmates are placed in solitary confinement [as punishment] after breaking a rule at the "Jail". During

11

lock downs, the "Jail" shirks its duty to protect inmates from harm by other inmates by isolating them behind solid steel cell door with either two or three other detainees. The conditions of the lock down are "dungeon-like" in that the Plaintiffs can rarely be seen or heard by the correctional officers through the steel cell door. During the lock down, the Plaintiffs are unable to communicate with correctional officers when they are in need of immediate medical or psychological treatment or in need of immediate protection from their cell roommate.

26.   Unlike solitary confinement, where the detainee is released from her cell for one hour a day to shower, exercise, and have access to the telephone; a prisoner detained during weekend lockdowns is neither released from her cell nor permitted to shower, exercise or have access to a phone to communicate with their lawyer or family.

27.   Plaintiff Koss, as representative of a class seeking only injunctive and the other plaintiffs, as representatives of a class seeking relief under Rule 23 (b)(3), challenge the continuation of weekend lock downs after tiers are searched because the prolonged lock down of the tiers is "a gratuitously severe restraint and hazard" and exposes the class to the "gratuitous infliction of pain and suffering." Second, the plaintiffs' complain that the defendants failed to provide them protection from attacks from cell mates and needed medical and psychological treatment during lock down weekends, thus "gratuitously expos[ing] them to dangerous and degrading conditions  and depriving them of their liberty without due process of law, a violation of their rights pursuant to the *Fourteenth Amendment*. They seek an injunction and damages." *Hart* at 889.

28.   The practice at the Cook County Jail is to exclude complaints concerning weekend lock down procedures from the formal grievance process. There is no available administrative

12

remedy for an inmate to complain about weekend lock downs at the Jail.

29.   The practice at the Cook County Jail requires supervisors from the housing division to collect written grievances from the grievance boxes periodically, record the number of grievances in a grievance collection log and then forward the grievances to caseworkers. On information and belief, many of the grievances are discarded by the supervisors prior to being turned over to the caseworkers.

30.   The practice at the Cook County Jail is for caseworkers to initially review the written grievances and to re-classify certain written grievances as requests. An entry is then made in the grievance collection log reflecting the number of "actual grievances." A written grievance which is reclassified as a "request" is not treated administratively as a grievance and therefore falls outside the administrative grievance process at the Jail.

31.   The practice at the Cook County Jail is to treat written grievances challenging the weekend lock down procedures as requests and not grievances.  Carol Merriweather, a detainee at the Jail since July 27, 2002 filed a written grievance on April 28,2003, challenging the weekend lockdowns.  Her written grievance was re-classified as a request by caseworker Kate Smith.  Superintendent Harrison of Division Four, approved the reclassification of the written grievance.

32.   Helen Kos filed a written grievance on December 16,2002, complaining about the weekend lock downs.  In her grievance, Ms. Kos said "I would like to know what can be done about lockdown weekends. I feel it is unconstitutional and unfair."  There has been no response by the defendant to the grievance filed by Ms. Kos.

33.   Charles A. Fasano is the Director of the John Howard Association, a foundation

13

which serves as a court-appointed monitor of the grievance process at the Jail.

34.     Under the "Explanation of Inmate Grievance Procedure", an appeal to the Grievance Appeals Panel may be made by a detainee "if [prisoner] ha[s] not received a decision and the time limits just mentioned have expired." (Explanation of Inmate Grievance Procedures, Step 6). According to Director Fasano, the Grievance Appeals Panel did not exist during the year 2002 and therefore was not available to Ms. Kos.

35.     Director Fasono also testified that he is aware that inmates frequently inform him that written grievances are discarded by supervisors at the Jail and the written Explanation of the Grievance Procedures are not made available to inmates.

36.     Director Fasano testified in his deposition that the current practices and procedures {pertaining to] weekend lock downs in Divisions Three and Four serve no legitimate penological objective.

37.     Upon information and belief, numerous female detainees have objected to and filed grievances concerning the weekend lock down practice. These female inmates have exhausted the available administrative remedies.

38.     Plaintiff Genise Hart was a pretrial detainee in Division Four during the January lock down, (January 24-26, 2003). After her tier was searched during the lock down, plaintiff Hart suffered great emotional distress due to the aforementioned conditions existing during the lock down.

39.     The Plaintiff Carmen Feliciano is a former inmate at the Cook County Jail and has been in the jail several times during the weekend lock downs.

40.     Due to her medical condition, the Plaintiff Feliciano has suffered extreme

14

emotional and physical pain and anguish as the result of the continuation of the  weekend lock

downs after her tiers have been searched.

41.     The Plaintiff Ann Francis Gelco is a former inmate at the Cook County Jail.

42.     The Plaintiff Gelco has been in the Jail on several times during weekend lock-

downs.

43.     During her incarceration in May, 2002, Plaintiff Gelco  was an inmate at Division

IV and she was pregnant.  On May 31, 2002 the lock down started on a (Friday) at 1:30 p.m. and

she was confined in a cell with two other inmates until June 2, 2002 (Sunday).  During this

period, there was no light in the cell, and Gelco had no access to the telephone to call her

attorney or family members.

44.     During this weekend lock down, Plaintiff Gelco  was confined in a two person cell

with three people.  One of the cell mates was mentally ill, suicidal, violent and made repeated

threats to the Plaintiff Gelco.  The suicidal cell mate attempted to strangle herself during the lock

down with her socks and the Plaintiff Gelco and the other cell mate screamed for help for

approximately 30-45 minutes before any correctional officer responded.  During this 30-45

minute time period, the Plaintiff Gelco attempted to stop the suicide and was struck in the jaw

and injured in the process.  When the correctional officers finally arrived, they removed the

suicidal cell mate for approximately 5 hours and then returned that cell mate to the Plaintiff's

[Gelco] cell for the remainder of the lock down.

45.     Due to her medical condition, Plaintiff Gelco has suffered extreme emotional and

physical pain and anguish as the result of the continuation of the weekend lock downs after her

tier has been searched.

15

46.    The Plaintiff Helen Koss is a pretrial detainee in Division IV at the Jail.  She has been incarcerated at the Jail since 2001 and has been subjected to numerous monthly prolonged weekend lock downs.

47.    During a weekend lock down in April of 2002, plaintiff Koss was attacked by her cell mate and was struck numerous times which caused bruises and she had clumps of her hair pulled out of her head.  During this attack, Ms. Koss was yelling for help and no correctional officer responded within a reasonable period of time.  It took approximately 10 minutes for an inmate worker to get the attention of a correctional officer due to the fact that there was no officer at the interlock station.  When the correctional officer finally arrived, the officer refused to take Plaintiff Koss to receive medical treatment and told her to wash herself up.  At no time thereafter, did the Plaintiff Koss receive medical treatment for her injuries.

48.    Plaintiff Kos  has also  suffered  extreme emotional and physical pain and anguish as the result of the continuation of the  weekend lock downs after her tiers have been searched

49.   The Plaintiff Caprice Morales was  a pretrial detainee in Division Four during the January lock down, (January 24-26, 2003).  After her tier was searched during this  lock down, plaintiff Morales suffered great emotional distress due to the aforementioned conditions existing during the lock down.  Furthermore, the lock down  constituted punishment.  The plaintiff has also been a pretrial detainee in Division Three in the summer of 2001 during lock down weekends and she also suffered great emotional distress after her tier was searched during this lock down.

50.    The Plaintiff Michelle Gandy has been pretrial detainee in Division Four during

16

lock downs in August of 2001 and during other lock downs over the last two years. After her tier was searched during these lock downs, plaintiff Gandy suffered great emotional distress due to the aforementioned conditions existing during the lock down.

## COUNT ONE

**(The Extended Lock Down of the Tiers After the Searches Are Completed is a Gratuitous Infliction of Pain and Suffering That Exposes Plaintiffs' to a Risk of Serious Harm)**

51.    Plaintiffs reallege paragraphs 1-50 above as paragraphs 1-50 of Count I.

52.    Defendant SHEAHAN knew or should have known that female inmates are subjected to unreasonable non-emergency weekend lock downs which continue after the tiers are searched. The weekend lockdowns serve no legitimate penological purpose and violate Plaintiffs' constitutional rights.

53.    Defendant SHEAHAN instituted, sanctioned, and approved the following policies, practices, customs, and procedures regarding the non-emergency prolonged lock downs of female individuals who are in the custody of the Cook County Department of Corrections:

A. Female pretrial detainees are subjected to weekend lock downs which occur at least once a month.

B. Although the searches of the Plaintiffs living quarters (Tiers) takes less than forty minutes, the Plaintiffs remain in their cells on lock down even after the searches are completed, where guards lack the ability to adequately monitor the inmates.

17

C. The Sheriff fails to protect inmates from harm from other inmates during the lock down.

D. The Sheriff fails to provide appropriate medical and/or psychological treatment to the Plaintiffs to prevent serious medical injuries during the lockdown.

E. The Defendant's weekend lock down procedure prevents female inmates from being able to communicate with the correctional officers that they are in need of immediate medical and/or psychological treatment.

F. The Defendant's weekend lock down procedure and practice is abusive and inflicts punishment upon pretrial detainees.

54. The Sheriff failed to establish appropriate procedures and practices to ensure that female inmates are not subjected to unreasonable lock downs.

55. The lock downs of plaintiffs under the above describe abusive conditions constitutes deliberate indifference to the rights of the plaintiffs in violation of the Fourth and Fourteenth Amendments to the U.S. Constitution.

56. As a direct and proximate result of the Sheriff's policies, practices and procedures, in his official capacity, the defendant subjected the Plaintiffs and members of the class to unreasonable lock downs which were abusive, dehumanizing, humiliating, terrifying, unpleasant, signifying degradation, submission and punishment.

57. As a direct and proximate result of the Sheriff's practices and policies, the defendant subjected the Plaintiffs and members of the class to a risk of serious harm by unreasonably protracted detention without adequate supervision by the guards." *Hart*, at 894.

58. Unless the Defendant is enjoined immediately, preliminary and permanently enjoined

18

from continuing to subject females inmates to abusive non-emergency weekend lock downs, defendant will continue to engage in the willful, wanton and deliberate violation of the constitutional rights of females, and plaintiffs and members of the class will continue to suffer gross violations of their constitutional rights and gross indignities, each of which constitutes irreparable injury for which plaintiffs have no adequate remedy at law.

## REQUEST FOR RELIEF

WHEREFORE, the Plaintiffs respectfully request that this Court:

1.  Finding that this action should proceed as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure;

2.  Enter an Order certifying the Class pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure and appointing Plaintiffs and their counsel to represent the class;

3.  Temporarily, Preliminarily and permanently restraining, enjoining and prohibiting defendant from undertaking, enforcing, maintaining or adopting any policies, procedures, practices or acts by which any female inmate is subjected to an abusive non-emergency weekend lock downs.

4.  Enter judgment on behalf of Plaintiffs and the Class and against Defendants for monetary damages to be determined at trial;

5.  Awarding plaintiffs and the class their costs and attorney's fees under Title 42 U.S.C. Sect. 1988.

6.  Grant Plaintiffs any and all other relief as law and justice demand.

19

_____
Plaintiffs' Attorneys


Thomas G. Morrissey, Ltd.
10249 S. Western Ave.
Chicago, Il. 60643
(773)-233-7900

Robert H. Farley, Jr., Ltd.
1155 S. Washington
Naperville, Il. 60540
(630)-369-0103

20

## CERTIFICATE OF SERVICE

I, Thomas G. Morrissey, one of the attorneys for the Plaintiffs, deposes and states that he

service a copy of the foregoing **Plaintiffs Fourth Amended Complaint** by mailing and faxing a

copy on or before 5:00 p.m. on July 6, 2005, to the attorney(s) listed below.

Thomas G. Morrissey

SERVICE LIST

To: Mr. Steven Puiszis
Hinshaw & Culbertson
222 N. LaSalle Street, Suite 300
Chicago, Il. 60601-1081


Mr. Patrick T. Driscoll, Jr.
Civil Bureau Chief
Office of the State's Attorneys
500 Richard J. Daley Center
Chicago, IL 60602