**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

**FILED**

**JULY 13, 2007**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| Genise Hart, Carmen Feliciano, | ) | |
| Ann Francis Gelco, Helen Koss | ) | |
| Caprice Morales  and | ) | |
| Michelle Gandy, individually and | ) | |
| and on behalf of a class, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | No. 03 C 1768 |
| | ) | |
| vs. | ) | JUDGE: James Zagel |
| | ) | MAGISTRATE: Ashman |
| THOMAS DART, | ) | |
| SHERIFF OF COOK COUNTY, | ) | |
| in his official capacity, and | ) | |
| Cook County | ) | |

FIFTH  AMENDED COMPLAINT

Now comes the Plaintiffs, by and through their attorneys, Thomas G. Morrisey, Ltd., and

Robert H. Farley, Jr., Ltd., and consistent with  the District Court's Order of October 25, 2005,

present the following Fifth  Amended Complaint.

INTRODUCTION

1. The plaintiffs are former pretrial detainees at the Cook County Department of

Corrections ("Jail"). The plaintiffs complain that the defendants subject them to a risk of serious

harm by unreasonably protracted detentions of them out of sight and hearing of the guards.

2. As pretrial detainees at the Jail, the plaintiffs were  subject to weekend lock downs

which occur at least once a month. During these lock downs, inmates were confined to their cells

starting a 1:30 p.m. on Friday afternoon and were not released until late on Sunday afternoon,

1

despite the fact that the searches of their respective tiers were completed prior to that time.

3. The plaintiffs allege that the lock downs were  unreasonably prolonged

because each tier had an interlock area which was  suppose to be staffed by a correctional officer

and it was  the only means of entering or departing the tier. These prolonged lock downs serve

no

justifiable administrative purpose at the Jail.

4. Division Three of the Jail houses women with special medical needs including but

not limited to inmates with severe mental illnesses; women in need of prenatal care; women in

need of medical care; and women being treated for substance abuse

5. During the lock downs, the Jail failed  to provide medical and/or psychological care to

female inmates with obvious medical and psychological needs.

6. After a tier was  searched during a lock down, the inmates remained in their cells on

lock down, despite the fact that there was  no valid reason for this restriction. The practice in

Division Three was  to search a majority of the tiers at the start of the lock down on Friday

afternoons. Plaintiffs present the following specific allegations in regards to this practice:

A. On Friday , January 17,2003, commencing with the 3:00 p.m. to 11:00 p.m. shift, a

weekend lock down began in Division 3 at the Cook County Department of Corrections ("Jail").

B. Division 3 maintained an  Officer's Living Unit Logs for each shift which includes the

time inmates were  detained inside their cells ("time doors locked") and when the inmates were

not permitted access to use the day room in the tier.

C. Tier B-1 is on the first floor of Division 3. The Living Unit Logs for this tier

reflect that the doors remained locked from 1:45 p.m. on Friday, January 17,2003 through 4:45

p.m. on Sunday, January 19,2003.

D. On January 19,2003, Lt. Zerbes was the Watch Commander for Division 3/8 on the 1500-2300 shift. At approximately 16:39 hours on that day , Lt. Zerbes issued an order ending the

weekend lock down.

E. On Friday, December 20,2002, Division 3 went on a lock down weekend starting with the 1500-2300 shift.

F. During the 1500-2300 shift on December 20,2002 in Division 3, tiers A-1,B-1, A2, and B-2 were searched.

G. On Sunday, December 22,2002, Lt. Zerbes was the Watch Commander for Division 3/8 for the 1500-2300 shift. At approximately 1720 hours, Lt. Zerbes issued an order ending the weekend lock down.

H. Tier A-2 is on the second floor of Division 3. The Living Unit Logs for this tier reflect that the doors remained locked from 1500 hours on December 20,2002 through 1700 on December 22,2002.

I. After the first and second floor tiers in Division 3 were searched on Friday December 20,2002, the inmates continued to remain on lock down in these tiers until the afternoon of December 22,2002.

## JURISDICTION AND VENUE

7. Jurisdiction is proper in this court pursuant to 28 U.S.C. Sect. 1331 and 2201, and pursuant to 42 U.S.C. Sect. 1983 and 1988

8. Venue is proper in this district pursuant to 28 U.S.C. Sec. 1391 (b), as all the events

giving rise to the claims asserted occurred in Cook County.

## CLASS ACTION ALLEGATIONS

9.(a) Plaintiffs bring this action as a class action pursuant to 23(b)(3) of

the Federal Rules of Civil Procedure.

 (b) The Class consist of the following class:

The class shall consist of all former female  inmates at the Cook County Department of Corrections who had been subjected to non-emergency, extended lock downs over a weekend after their tier had been searched at the Jail and who were not incarcerated on March 11,2003. The class shall also include those inmates who were incarcerated at the time of the filing and who had exhausted their available administrative remedies prior to March 11,2003.

(c) The class is so numerous that joinder of all persons is impracticable. The practice and

policy at the Jail was  to lock down the female divisions at the Jail over weekends and to

continue the lock downs after their tiers have been searched. Plaintiffs believe that the class

probably numbers well over 10,000 female inmates.

(d) There are questions of law and fact common to the class. These questions

predominate over any questions affecting only individual Class members. These legal and factual

questions include:

(i) Whether there were  weekend lock downs in Divisions Three and Four  which were

unreasonably protracted;

(ii) Whether during unreasonably protracted detentions, plaintiffs were  out of sight and

hearing of the guards;

(iii) Whether during unreasonably protracted detentions, a risk of serious harm to the

inmates arose  because of the unreasonably protracted detentions out of sight and hearing of the

guards.

4

(e) Plaintiffs' claims are typical of the claims of the class .

(f) Plaintiffs will fairly and adequately protect the interest of all class members as they are

members of the class and their claims are typical of the claims of all class members. Each of the

plaintiffs is incensed at the treatment accorded the class members and will aggressively pursue

the interests of the entire class. Plaintiffs' interest in obtaining monetary relief for the

violations of constitutional rights and privileges are consistent with and not antagonistic to those

of any person within the class. Plaintiffs have retained counsel competent and experienced in

complex class action litigation.

(g) This matter is brought as a class action pursuant to Rule 23(b)(3) of the

Federal Rules of Civil Procedure, because a class action is superior to other available means for a

fair and efficient adjudication of this controversy. The damages suffered by individual class

members are small compared to the burden and expense of individual prosecution of the action to

address defendant's unconstitutional conduct.

## FACTS AND PARTIES

10. Plaintiff Genise Hart is a citizen of the United States and resident of the State of

Illinois. During the period from January 19, 2003, through February 24,2003, Ms. Hart was an

inmate in Division Four at the Cook County Department of Corrections awaiting trial. While

incarcerated, Ms. Hart was subjected to a weekend lock down which continued for substantial

period after her tier was searched. .

11.  Plaintiff Caprice A. Morales is a citizen of the United States and resident of the State of Illinois. The Plaintiff Morales has been an inmate at the Cook County Department of Corrections on several occasions during the last two years in Division Three and Division Four and has been subjected to numerous lock downs while waiting trial which continued for substantial periods after her tier was searched. During a period when she was in Division Three, she was pregnant and was denied prenatal care.

12. Plaintiff Ann Francis Gelco is a citizen of the United States and resident of the State of Illinois. She has been an inmate at the Cook County Department of Corrections on several occasions during the last two years and has been subjected to numerous lock downs while waiting trial in Division Three and Four which continued for substantial periods after her tier was searched. Plaintiff suffers from a long standing mental illness which is treated with psychotropic medication. During a lock down in Division Three, the plaintiff was pregnant and was not provide with prenatal care or her medication for her mental illness. This caused her to become depressed, anxious and gave rise to suicidal thoughts.

13.  Plaintiff Helen Koss was  a pretrial detainee in Division IV at the Jail at the time of the filing of the initial complaint. Ms. Kos's incarceration began on December 16,2002. Ms. Kos filed a grievance regarding the weekend lock downs at the Jail. She was  subjected to numerous monthly prolonged weekend lock downs in Division Three and Division Four which continued for substantial periods after her tier was searched. During one lock down in Division Three, plaintiff received a black eye, busted lip, bloody nose and some of her hair was pulled out. She was denied any medical treatment from the correction officers . During a subsequent lock down

in Division Three, plaintiff was pregnant and experienced labor pains. During a third lock down,

a cell mate went into labor, and because there were no guards on duty to call for assistance, the

plaintiff assisted in the delivery of the child.

14.  Plaintiff Michelle Gandy was a pretrial detainee at the Jail in August of 2001.

While a pretrial detainee, Ms. Gandy was subjected to a prolonged weekend lock downs .which

continued for substantial period after her tier was searched

15. Defendant Thomas Dart is an elected county official whose duties include

implementing and executing policies concerning the operation of the Cook County

Jail (Jail) pursuant to 55 ILCS 5/3-15003. Defendant Dart is sued in his official capacity. At all

times relevant hereto, Defendant Dart was acting under color of law.

16. Defendant Cook County, under Illinois law, funds the Office of the defendant

Sheriff, and is therefore required to pay a judgment entered against a sheriff's office in an

official

capacity.

17.  At the Jail, female inmates are housed in Division Four and Division Three. Division

Four is separated into sixteen separate units which are commonly called "tiers" at the Jail. Each

tier has an interlock area which is staffed by a correctional officer and is the only means of

entering and departing the tier.

18.  Division Three has only six separate units. There are three levels in Division Three,

and each floor has two tiers which are separated by a monitoring station. It is impossible for an

inmate to pass contraband between tiers on the same floor in Division Three.

19. Inmates who are in need of medical and/or psychological treatment are assigned to

Division Three. Many of the women are pregnant and/or suffer from severe mental illness. Division Three has one of the highest ratios of correctional officers to inmates at the Cook County Jail.

20. Inside each tier, there is a common holding area, which is called a day room, where inmates receive their meals, have access to pay phones, a television, and can socialize with other inmates in the tier. Each tier has shower stalls, which are adjacent to the day room. The correctional officer is able to monitor from the interlock all the inmates in the day room to maintain security and protection for the inmates from fellow inmates.

21. In Division Three and Four, the cells have solid steel door with a small opening, two bunk beds, a toilet and a sink. Correctional officer can not maintain visual contact with the inmates from the interlock once they are placed inside the cells.

22. Three or four times each month, teams of approximately five to seven correctional officers entered  the tiers and conducted random searches called "shakes" of the cells and the day room for contraband and other unauthorized items. It took  these correctional officers anywhere from twenty to forty minutes to "shake" a tier. During the "shakes", the inmates were normally outside the tiers at recreation. Plaintiffs are not contesting the need to conduct periodic "shakes" and emergency lock downs.

23. In addition to the random "shakes" of the tiers, all pretrial detainees were subjected to weekend lock downs at least once a month. During these lock downs, inmates were confined to their cells starting at 1:30 p.m. on Friday afternoon and were not released until late on Sunday afternoon. During the weekend lock-down, each tier in the division was allegedly searched for contraband in the same manner as the random "searches" and it took  the correctional staff the

same amount of time to conduct these searches. After a tier was searched, the inmates remained in their cells on lock down, despite the fact that there was no valid or legitimate reason for this restriction.

24. During lock downs, the "Jail" shirked its duty to protect inmates from harm from other inmates by isolating them behind solid steel cell door with either two or three other detainees. The conditions of the lock down were "dungeon" like in that the Plaintiffs could rarely be seen or heard by the correctional officers through the steel cell door. During the lock down, the Plaintiffs were unable to communicate with correctional officers when they were in need of immediate medical or psychological treatment or in need of immediate protection from their cell roommate.

25.  The practice at the Cook County Jail was  to exclude complaints concerning weekend

lock down procedures from the formal grievance process. There was no available administrative remedy for an inmate to complain about weekend lock downs at the Jail.

26. The practice at the Cook County Jail was for supervisors from the housing divisions to collect written grievances from the grievance boxes periodically, record the number of grievances in a grievance collection log and then forward the grievances to caseworkers. On information and belief, many of the grievances were discarded by the supervisors prior to being turned over to the caseworkers.

27. The practice at the Cook County Jail was for caseworkers to initially review the written grievances submitted and to reclassify certain written grievances as requests. An entry is then made in the grievance collection log reflecting the number of "actual grievances". A written

grievance which was reclassified as a "request" was not treated administratively as a grievance and  therefore fell outside the administrative grievance process at the Jail.

28. The practice at the Cook County Jail was to treat written grievances challenging the weekend lock down procedures as requests and not grievances. Carol Merriweather, a detainee at the Jail since July 27,2002 filed a written grievance on April 28,2003, challenging the weekend lockdowns. Her written grievance was reclassified as a request by caseworker Kate Smith. Superintendent Harrison of Division Four, approved of the reclassification of the written grievance.

29. Helen Kos filed a written grievance on December 16,2002, complaining about the weekend lock downs. In her grievance, Ms. Kos said " I would like to know what can be done about lock down weekends. I feel it is unconstitutional and unfair". There has been no response by the defendant to the grievance filed by Ms. Kos.

30. Charles A. Fasano is the Director of the John Howard Association. The John Howard Association serves as a monitor of the grievance process at the Jail.

31. Under the "Explanation of Inmate Grievance Procedure", an appeal to the Grievance Appeals Panel may be made by a detainee "if you have not received a decision and the time limits just mentioned have expired". (Explanation of Inmate Grievance Procedures, Step 6). According to Director Fasano, the Grievance Appeals Panel did not exist during the year 2002 and therefore was not available to Ms. Kos.

32. Director Fasano also testified that he is aware that inmates frequently inform him that written grievances are discarded by supervisors at the Jail and the written Explanation of the

Grievance Procedures are not made available to inmates.

33. Director Fasano testified in his deposition that the current practices and procedures followed for weekend lock downs in Divisions Three and Four serve no legitimate penological objective.

34. Upon information and belief, numerous female detainees have objected to and filed grievances concerning the weekend lock down practice. These female inmates have exhausted the available administrative remedies.

35. The Plaintiff Genise Hart was a pretrial detainee in Division Four during the January lock down, (January 24-26, 2003). After her tier was searched during the lock down, plaintiff Hart suffered great emotional distress due to the aforementioned conditions existing during the lock down. Furthermore, the lock down constituted punishment.

36.. Plaintiff Ann Francis Gelco is a former inmate at the Cook County Jail.

37.  Plaintiff Gelco has been in the Jail on several times during weekend lock downs.

38. During her incarceration in May, 2002, Plaintiff Gelco was an inmate at Division IV and she was pregnant. On May 31, 2002 the lock down started on a (Friday) at 1:30 p.m. and she was confined in a cell with two other inmates until June 2, 2002 (Sunday). During this period, there was no light in the cell and she had no access to the telephone to call her attorney or family members.

39. During this weekend lock down, Plaintiff Gelco was confined in a two person cell with three people. One of the cell mates was mentally ill, suicidal, violent and made repeated threats to the Plaintiff Gelco. The suicidal cell mate attempted to strangle herself during the lock down with her socks and the Plaintiff Gelco and the other cell mate screamed for help for

11

approximately 30-45 minutes before any correctional officer responded. During this 30-45 minute time period, the Plaintiff Gelco attempted to stop the suicide and was struck in the jaw and injured in the process. When the correctional officers finally arrived, they removed the suicidal cell mate for approximately 5 hours and then returned that cell mate to the Plaintiffs Gelco's cell for the remainder of the lock down.

40. Due to her medical condition, the Plaintiff Gelso has suffered extreme emotional and physical pain and anguish as the result of the continuation of the weekend lock downs after her tiers have been searched

41.  Plaintiff Helen Koss was a pretrial detainee in Division IV at the Jail on March 11, 2003 and has been incarcerated at the Jail since 2001 and has been subjected to numerous monthly prolonged weekend lock downs.

42. During a weekend lock down in April of 2002, plaintiff Koss was attacked by her cell mate and was struck numerous times which caused bruises and she had clumps of her hair pulled out of her head. During this attack, Ms. Koss was yelling for help and no correctional officer responded within a reasonable period of time. It took approximately 10 minutes for an inmate worker to get the attention of a correctional officer due to the fact that there was no officer at the interlock station. When the correctional officer finally arrived, the officer refused to take Plaintiff Koss to receive medical treatment and told her to wash herself up. At no time thereafter, did the Plaintiff Koss receive medical treatment for her injuries.

43.  Plaintiff Kos has also suffered extreme emotional and physical pain and anguish as the result of the continuation of the weekend lock downs after her tiers have been searched

44. The Plaintiff Caprice Morales was a pretrial detainee in Division Four during the

January lock down, (January 24-26, 2003). After her tier was searched during this lock down,

plaintiff Morales suffered great emotional distress due to the aforementioned conditions existing

during the lock down. Furthermore, the lock down constituted punishment. The plaintiff has

also been a pretrial detainee in Division Three in the summer of 2001 during lock down

weekends and she also suffered great emotional distress after her tier was searched during this

lock down.

45. The Plaintiff Michelle Gandy has been pretrial detainee in Division Four during

lock downs in August of 2001 and during other lock downs over the last two years. After her tier

was searched during these lock downs, plaintiff Gandy suffered great emotional distress due to

the aforementioned conditions existing during the lock down.

COUNT ONE

46.  Plaintiffs reallege paragraphs 1-45 as paragraphs 1-45 of Count 1.

46. Defendant Sheriff knew or should have known that female inmates were subjected to

 unreasonably protracted detentions and that during these unreasonably protracted detentions,

female detainees were  out of sight and hearing of the guards. Furthermore,  the Sheriff knew or

should have know that a risk of serious harm to the females inmates  arose because of the

unreasonably protracted detentions out of sight and hearings of the guards.

47. Defendant Sheriff  instituted, sanctioned, and approved the following policies,

practices, customs, and procedures regarding the non-emergency prolonged lock downs of

female

individuals who were  in the custody of the Cook County Department of Corrections:

A. Female pretrial detainees were subjected to weekend lock downs which occur at

13

least once a month.

B. Although the searches of the Plaintiffs living quarters (Tiers) took  less than forty minutes, the Plaintiffs remained in their cells on lock down even after the searches were completed, where guards lacked the ability to adequately monitor the inmates.

C. The Sheriff failed to protect inmates from harm from other inmates during the lock downs.

D. During weekend lock downs, the Sheriff had a practice and/or procedure where guards would be assigned to  cross-watch two or more tiers.

E.   During weekend lock downs, female inmates were unable to communicate with the correctional officers that they were in need of immediate medical and/or psychological treatment in part  because of the Sheriff's  cross-watching practice.

48. The Sheriff failed to establish appropriate procedures and practices to ensure that lock downs are not unreasonably prolonged.

49. The lock downs of plaintiffs under the above describe abusive conditions constituted deliberate indifference to the rights of the plaintiffs in violation of the Fourteenth Amendments to

the U.S. Constitution.

50. As a direct and proximate result of the Sheriff's policies, practices and procedures, in his official capacity, the defendant subjected the Plaintiffs and members of the class to a risk of serious harm  because of the unreasonably protracted detentions out of sight and hearings of the guards.

REQUEST FOR RELIEF

14

WHEREFORE, the Plaintiffs respectfully request that this Court:

1. Finding that this action should proceed as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure;

2. Enter judgment on behalf of Plaintiffs and the Class and against Defendants for monetary damages to be determined at trial;

3. Awarding plaintiffs and the class their costs and attorney's fees under Title 42 U.S.C. Sect. 1988.

.

_____
"/s/" Thomas G. Morissey
One of the Attorneys for the Plainitffs

Thomas G. Morrissey, Ltd.
10249 S. Western Ave.
Chicago, Il. 60643
(773)-233-7900

Robert H. Farley, Jr., Ltd.
1155 S. Washington
Naperville, Il. 60540
(630)-369-0103