# Exhibit AA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| Genise Hart, Carmen Feliciano, | ) | |
| Ann Francis Gelco, Helen Koss | ) | |
| Caprice Morales and | ) | |
| Michelle Gandy, individually and | ) | |
| and on behalf of a class, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | No. 03 C 1768 |
| | ) | |
| vs. | ) | JUDGE: James Zagel |
| | ) | MAGISTRATE: Ashman |
| THOMAS DART, | ) | |
| SHERIFF OF COOK COUNTY, | ) | |
| in his official capacity, and | ) | |
| Cook County | ) | |

## PLAINTIFFS' RESPONSE
## TO DEFENDANTS FIRST REQUEST FOR ADMISSIONS

Now come the Plaintiffs, by and through their attorneys, Thomas G. Morrissey, Ltd., and

Robert H. Farley, Jr., Ltd, and in Response to the Defendants' First Request For Admissions,

states as follows:

1. Plaintiff, Helen Koss was served with a Notice of Deposition and rider seeking

document production under a cover letter dated September 24, 2007.

**Response: Admitted.**

2. At neither her deposition nor at any time throughout this litigation has Helen Koss

produced any documents responsive to the Rider seeking document production.

**Response: Admitted.**

1



Response: Admitted.

4. When she was arrested  in October 2001, Helen Koss was pregnant with another child. See pages 17-21 of Exhibit B.

Response: Admitted.

Response: Admitted.



Response: Admitted.

7. After she was incarcerated in the Cook County DOC in October 2001, Helen Koss received medical check-ups, treatment and medical provisions during the course of her pregnancy.

Response: Admitted.



Response: Admitted.

9. Helen Koss does not have custody of the second child, Darrell Anthony Koss who was born while she was receiving medical care at the Cook County DOC on June 6, 2002.

**Response: Admitted.**

10. Helen Koss would be administered her medications during weekend lockdowns at the DOC.

**Response: Admitted.**

11. While pregnant, Helen Koss did receive medical attention during weekend lockdowns.

**Response: Denied.**

12. Helen Koss has no idea why weekend lockdowns were conducted at Cook County DOC.

**Response: Admitted.**

13. Plaintiff, Ann Francis Gelso was served with a Notice of Deposition and rider seeking document production.

**Response: Admitted.**

14. At neither her deposition nor at any time throughout this litigation has Ann Francis Gelso produced any documents responsive to the Rider seeking document production.

**Response: Qualified Admitted.** Ms. Gelso provided defense counsel with an authorization for the release of her medical records from Dr. Menzes and Dr. Zelinski.



**Response: Admitted.**

**Response: Admitted.**



**Response: Admitted.**



**Response: Admitted.**

19. Plaintiff, Michelle Gandy was served with a Notice of Deposition and rider seeking document production. See copy of said Notice of Deposition, Rider and Certificate of .

**Response: Admitted.**

20. At neither her deposition nor at any time throughout this litigation has Michelle Gandy produced any documents responsive to the Rider seeking document production.

**Response: Admitted.**



**Response: Admitted.**

22. During the multiple occasions that Michelle Gandy has been incarcerated at the Cook County DOC, she receives medical treatment consisting of asthma breathing treatements.

**Response: Admitted.**

23. On the multiple occasions Michelle Gandy has been incarcerated at the Cook County DOC, she has been provided with medications, including Prednisone for her asthma.

**Response: Admitted.**

4

24. Although she suffers from ashtma, Michelle Gandy continues to smoke cigarettes.

**Response: Admitted.**

25. Plaintiff, Caprice Morales was served with a Notice of Deposition and rider seeking

document production and Certificate of Service.

**Response: Admitted.**

26. At neither her deposition nor at any time throughout this litigation has Caprice

Morales produced any documents responsive to the Rider seeking document production.

**Response: Admitted.**

████████████████████████████████████████████

██████████████████████████████████████s.

**Response: Admitted.**

████████████████████████████████████████

████████████████████████████████

**Response: Admitted.**

29. Caprice Morales has served time at the Cook County DOC more than four or five

times.

**Response: Admitted.**

████████████████████████████████████████

**Response: Admitted.**

31. Caprice Morales was incarcerated at the Cook County DOC in 2001 while she was

pregnant.

**Response: Admitted.**

32. Since she was pregnant at the time of her incarceration in 2001, Caprice Morales was assigned to Division 3 because that is the medical division.

**Response: Admitted.**

33. While an inmate at the Cook County DOC, Caprice Morales has seen other inmates with contraband, including a lot of illegal drugs and money.

**Response: Admitted.**

34. While an inmate at the Cook County DOC, Caprice Morales required medical attention and was treated at the Cook County Correctional Facilities' Infirmary after she sent in a referral to the nurse's station.

**Response: Qualified Admitted and Qualified Denied.** There was one occasion when I had I had a cold and I went to the infirmary after I sent in a referral. There was at least one occasion when I needed 'medical attention' that being receiving my prenatal medication (vitamins) and I did not receive the medication.

35. Weekend lockdowns were performed at the Cook County DOC in order to perform searches to maintain safety of the detainees as well as the officers from contraband, including drugs and other things.

**Response: Denied.**

36. During weekend lockdowns inmates received all essential services.

**Response: Denied.**

37. During weekend lockdowns inmates were permitted visitors.

**Response: Qualified Admitted and Qualified Denied.** The CCDOC permitted some visitation but also denied some visitation due to the fact that the Division was on weekend

6

lockdown.

38. During weekend lockdowns, worker inmates were permitted out of their cells.

**Response: Qualified Admitted and Qualified Denied.** Worker inmates were permitted out of their cells for some period of time during the weekend lockdowns, but were not permitted out of their cells for all the time during the weekend lockdowns.

39. Contraband includes such things as drugs, weapons, shanks, etc.

**Response: Qualified Admitted and Qualified Denied.** Medication (drugs) administered by CCDOC / Cermak to the inmates is not contraband. Illegal or unathorized drugs are contraband. Weapons and shanks are contraband. "Etc." is not contraband.

40. Since they are designated to discover contraband hidden by inmate (a/k/a detainees) weekend lockdowns serve a legitimate security purpose in penological institutions.

**Response: Denied.**

41. Being assigned to two tiers (a/k/a crosswatching) puts a correctional officer in a position where they would have to work harder to maintain safety and security of the detainees, but it can be done because it is done.

**Response: Denied.**

42. When a nurse is handing out medication during a weekend lockdown, there is a correctional officer in the interlock and a second officer that physically walks around and unlocks the cell doors to let the inmates out to the nurse cart for the dispensing of their medication.

**Response: Denied.**

43. When you are assigned to the inner tier of Division 4, a correctional officer can hear activity in the day room and also from the cells.

**Response: Denied.**

44. Each security check is different. Officers work out of their own means or mode and therefore, there is no particular timeframe that can be set on how long it actually takes to conduct a security check.

**Response: Admitted.**

45. All security checks are done with backup officers in the interlock.

**Response: Denied.**

46. Officers who would perform backup are generally within the vicinity of the tier, including area officers, tier officers, movement officers, visiting officers, sanitation officers, or any one of the officers on duty.

**Response: Denied.**

47. Weekend lockdowns were conducted at the Cook County DOC for the safety and security of the detainees and staff to search for contraband, which is a constant problem at the jail.

**Response: Denied.**

48. The weekend lockdowns were conducted at the Cook County DOC to control contraband in the jail such as excessive lines, uniforms, hooch (self-made alcohol), excessive matches, lighters, drugs, shanks, weapons, etc.

**Response: Denied.**

49. During weekend lockdowns, inmates would receive all essential services, including but not limited to, nursing services, delivery of medications, three meals a day, psychiatric referrals, visitors and attorneys.

8

**Response: Denied.**

50. When there is a weekend lockdown, the inmates on the tier are permitted to leave their cells and go into the day room before the tier is searched in its entirety.

**Response: Qualified Admitted and Qualified Denied.** During a weekend lockdown, the entire tier is lockdown. At the commencement of the weekend lockdown, all the inmates on the tier are locked in their cells. At the time their tier is search, the inmates are ordered out of their cell and required to go into the day room while their cells are searched. After their cells are searched, the inmates are ordered to leave the day room and return to their cells and they remain lockdown (except for a few inmate workerrs) in their cells until the weekend lockdown ends in the Division.

51. The inmates can leave their cells and go into the day room during a cell search.

**Response: Qualified Admitted and Qualified Denied.** The inmates are ordered to leave their cells and ordered to go into the day room during a cell search. Although they can leave their cells, they do not have the ability to refuse to leave their cells during the cell search.

52. After the cell search is conducted, the inmates are returned from the day room and locked back into their cells.

**Response: Admitted.**

53. Inmates are permitted out of their cell during weekend lockdowns if they need to be sent for a psych evaluation or medical attention or to the dispensary or for an attorney visit, or a regular visit.

**Response: Qualified Admitted and Qualified Denied.** The full range of services available to inmates during non weekend lockdowns are not available to inmates during weekend

9

lockdowns.

54. The tier workers for each tier are permitted outside of their cells following when the tier has been searched.

**Response: Qualified Admitted and Qualified Denied.** Some tier workers are permitted outside of their cells for a limited time during weekend lockdowns.

55. When an officer is given a cross watch assignment, she has to work harder but is capable of cross watching and making all of the required security checks.

**Response: Qualified Admitted and Qualified Denied.** Admits that cross watching requires the officer to work harder, but denies that the officer is capable of cross watching and making all of the required security checks.

56. Harold Simpson was elected Chief Union Steward for correctional officers at the Cook County DOC in September 2003.

**Response: Admitted.**

57. As Chief Union Steward, Harold Simpson drafted double assignment memos in preparation of the Union's next contract negotiations session to assert that correctional officers needed more pay because they were doing more work.

**Response: Admitted.**

58. The Union tried to assert that double assignments (a/k/a crosswatching) constituted a requirement for more money.

**Response: Qualified Admitted.** The Union also asserted that cross watching posed a danger and risk to injury to the inmates and correctional officers.

59. The Union for which Harold Simpson is Chief Union Steward has not be able to

10

point to any specific incidents where someone has been injured during a crosswatching situation.

**Response: Admitted.**

60. Harold Simpson stated it would not surprise him to know that officer/investigator Fontella Marshall-Brown testified that when she was assigned to cross-watch, it required more work, but it was something she could do.

**Response: Admitted.**

61. According to former correctional officer Renae Baker it is correct to she say has a pretty sketchy recollection of when she was a correctional officer and when weekend lockdowns were being performed.

**Response: Admitted.**

62. Renee Baker testified that she does not know who Wanda Sparks is.

**Response: Admitted.**

63. Under the *Duran* Consent Decree, crosswatching is permitted at the Cook County DOC.

**Response: Qualified Admitted and Qualified Denied.** As stated in the MGT Report "CCDOC's use of cross watching far exceeds the narrow use permitted by the Duran decree. . . Our review indicates that CCDOC essentially does not comply with the terms of the Duran consent decree as it relates to cross-watching. . ."

64. During the weekend lockdown of the tier, all of the inmates would be removed from their cells and placed in the day room while their cells were being searched.

**Response: Denied.**

65. One of the primary purposes of weekend lockdowns was to limit inmate movement

11

so that contraband could not be transported, transferred or hidden.

    **Response: Denied.**

    66. Inmates have hidden contraband in duct work at the Cook County DOC.

    **Response: Denied.**

    67. Inmates have hidden contraband in piping at the Cook County DOC.

    **Response: Denied.**

    68. Inmates have hidden contraband in the toilet system at the Cook County DOC.

    **Response: Denied.**

    69. Inmates have attempted to transfer contraband between floor levels during weekend

lockdowns at the Cook County DOC.

    **Response: Denied.**

    70. Inmates hide contraband in stair wells at the Cook County DOC.

    **Response: Denied.**

    71. Inmates hide contraband in a multitude of different places and areas at the Cook

County DOC.

    **Response: Admitted.**

    72. The discovery and removal of contraband creates a safer and mo[r]e secure

environment for inmates and correctional staff at the Cook County DOC.

    **Response: Qualified Admitted and Qualified Denied.** "Contraband" as used during

this case has a number of meanings, including but not limited to, weapons, papers, linen and

clothes. The removal of a "contraband" weapon and similar items is admitted. The removal of a

"contraband"piece of paper, linen and similar items are denied.

73. Each of the twenty-one (21) grievances that officer Edgar Singleton filed relative to

crosswatching assignments were denied.

**Response: Admitted.**

74. Each of officer Singleton's grievances were denied at each level of the grievance

process up to and through arbitration.

**Response: Admitted.**

75. Officer Edgar Singleton never worked in Division 3 or Division 4 during a weekend

lockdown.

**Response: Admitted.**


Respectfully submitted,

*/s/ Robert H. Farley, Jr.*
One of the Attorneys for Plaintiffs

Dated: March 6, 2008


Thomas G. Morrissey
Thomas G. Morrissey, Ltd.
10249 S. Western Avenue
Chicago, IL 60652
Phone: 773-233-7900
Fax:    773-239-0387

Robert H. Farley, Jr.
Robert H. Farley, Jr., Ltd.
1155 S. Washington Street
Naperville, IL 60540
Phone: 630-369-0103
Fax:    630-369-019

13

# CERTIFICATE OF SERVICE

I, Robert H. Farley, Jr., Attorney for the Plaintiffs, deposes and states that he caused the foregoing Response to be served on counsel of record, by faxing and mailing a copy to the persons listed below on this 6th day of March, 2008.

*/s/ Robert H. Farley, Jr.*

Attorneys for the Defendant

Mr. Bernard E. Jude Quinn
Mr. Frank J. Marsico
Hinshaw & Culbertson
222 N. LaSalle, Street, Suite 300
Chicago, IL 60601-1081

Mr. Patrick T. Driscoll, Jr.
Mr. Patrick Blandchard
Office of the State's Attorneys
500 Richard J. Daley Center
Chicago, IL 60602

14

# Exhibit BB

012908GH.txt

Ս

1          IN THE UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF ILLINOIS

3                 EASTERN DIVISION

4

5    GENISE HART, CARMEN FELICIANO,      )
     ANN FRANCIS GELCO, HELEN KOSS,      )
6    ANNE FRANCIS GELSOS, CAPRICE        )
     MORALES and MICHELLE GANDY,         )
7    Individually and on behalf of a     )
     class,                              )
8              Plaintiffs,               )
               -vs-                      )   No. 03 C 1768
9    MICHAEL SHEAHAN, SHERIFF OF COOK    )
     COUNTY, in his official capacity,   )
10   and THE COUNTY OF COOK              )
               Defendants.               )
11

12          The deposition of GENISE HART called for

13   examination pursuant to Notice and the Rules of

14   Civil Procedure for the United States District

15   Courts pertaining to the taking of depositions,

16   taken before LIZA MARIE REGAN, a notary public

17   within and for the County of Cook and State of

18   Illinois, at 222 North LaSalle Street, Suite 300,

19   Chicago, Illinois, on the 29th day of January,

20   2008, at the hour of 4:17 p.m.

21

22

23   Reported By: Liza Marie Regan, CSR, RPR

24   License No.: 084-002477

                                                        1

Ս

1    APPEARANCES:

2          LAW OFFICES OF THOMAS G. MORRISSEY,

3          BY:  MR. THOMAS G. MORRISSEY,

012908GH.txt

8      Q.   He did?  What are you pulling out,

9    Ms. Hart?

10     A.   This.

11     Q.   You're looking at the second page of this

12   notice which is a rider requesting you to produce

13   certain documents here today?

14     A.   Right.

15     Q.   Did you bring with you any of the

16   documents that would be responsive to that request?

17     A.   I didn't have nothing.  I didn't have

18   medical records or nothing like that, you know.  I

19   didn't have no paperwork.

20     Q.   When did you first receive this request

21   for document production attached to the notice for

22   deposition?

23     A.   This right here, this is the first time I

24   seen this earlier today.

                                                    9


1      Q.   You met with Mr. Morrissey in his office

2    today?

3      A.   Right.

4      MR. QUINN:  The next document I'd like to mark

5    as an exhibit is this right here.  This is

6    Exhibit 2.

7                        (Whereupon, Hart Deposition

8                        Exhibit No. 2 was marked for

9                        identification.)

10   BY MR. QUINN:

11     Q.   Ms. Hart, can you look at this document

12   we've had marked as Exhibit 2.

                    Page 8

# Exhibit CC

## Thomas G. Morrissey, Ltd.
ATTORNEY AT LAW
10249 SOUTH WESTERN AVENUE
CHICAGO, ILLINOIS 60643
773-233-7900
FAX: 773-239-0387

THOMAS G. MORRISSEY

Mr. Bernard E. Jude Quinn
Hinshaw & Culbertson
222 N. LaSalle Street, Suite 300
Chicago, IL 60601-1081

February 7, 2008

Via: Facsimile and U.S. Mail

Re:   *Hart v. Sheahan*, 03 C. 1768

Dear Mr. Quinn:

Pursuant to your request, I am enclosing Ms. Geiso's authorization for the release of her medical records from Dr. Menzes and Dr. Zelinski.

Sincerely,

Thomas G. Morrissey

826296

# Exhibit DD



& C U L B E R T S O N  LLP

February 12, 2008

**ATTORNEYS AT LAW**
222 North LaSalle Street
Suite 300
Chicago, IL 60601-1081

312-704-3000
312-704-3001 (fax)
www.hinshawlaw.com

**VIA FACSIMILE & REGULAR MAIL**

Thomas G. Morrissey, Esq.
Attorney at Law
10249 South Western Avenue
Chicago, IL  60643

> **Re:**  *Genise Hart, et al. v. Thomas Dart, Sheriff of Cook County, et al.*
> **Case No. 03 C 1768**

Dear Mr. Morrissey:

Under your letter of February 7, 2008 (received in my office on February 11, 2008), you provide me with your client, Anne Frances Gelso's, authorization for the release of her medical records from Dr. Menzes and Dr. Zelinski. However, one problem is, you provide me with only one original signed authorization.  I require two originals for two different medical care providers.

Furthermore, I requested these medical records in October 2007. You refused to produce these for me yourself and insisted that I subpoena them. For this purpose, I sent the medical release authorization form to you sometime in late October or early November 2007. However, you are just getting around to returning it to me. You are therefore precluded from attempting to offer any evidence regarding your client(s)' medical and/or psychiatric condition(s) to trier of fact.

Finally, unless I am mistaken, discovery in this case is closed.

Sincerely,

HINSHAW & CULBERTSON LLP

Bernard E. Jude Quinn
312-704-3524
jquinn@hinshawlaw.com

BEJQ/mbc

cc:    ASA Patrick Smith

Arizona  California  Florida  Illinois  Indiana  Massachusetts  Minnesota  Missouri  New York  Oregon  Rhode Island  Wisconsin

# Exhibit EE

## UNITED STATES DISTRICT COURT
### FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 3.0
### Eastern Division

Carmen Feliciano, et al.

                  Plaintiff,

v.

                                      Case No.: 1:03−cv−01768
                                      Hon. James B. Zagel

County of Cook, et al.

                  Defendant.

---

### NOTIFICATION OF DOCKET ENTRY

This docket entry was made     *EE*     December 20, 2007:

       MINUTE entry befo                    :Magistrate Judge Status hearing
held on 12/20/2007; and coi                  0 AM. Fact discovery closure is
extended to 1/28/2008. Mai

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.