# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Judge Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 1768 | **DATE** | July 24, 2008 |
| **CASE TITLE** | GENISE HART, CARMEN FELICIANO, ANN FRANCIS GELCO, HELEN KOSS, CAPRICE MORALES, and MICHELLE GANDY, individually and on behalf of a class v. THOMAS DART, SHERIFF OF COOK COUNTY, in his official capacity, and COOK COUNTY | | |

**DOCKET ENTRY TEXT:**

Defendants' Motion for Summary Judgment [160] is granted in part and denied in part.

## STATEMENT

This case started in 2003. The controversy arose from a now discontinued practice in the two female inmate (and other) Divisions of the Cook County Jail.[1] Once a month, the jail is locked down–the inmates are kept inside their cells to enable the correctional officers to search for weapons and contraband. The lockdowns occur on weekends and last about 48 hours, a long time to be confined to a cell. Recent experience has shown that the lockdowns may not have been necessary but courts do not judge restrictive prison procedures by a standard that bars all but necessary ones. What is at issue here is whether one aspect of the Cook County lockdown is improper. The complaint is described and the issue identified in *Hart v. Sheahan,* 396 F.3d 887 (7th Cir. 2005). The Court of Appeals said this:

> The lockdown lasts from Friday afternoon to Sunday afternoon . . . and during that entire time, the inmates are confined to their cells. They are fed, but they are not under the observation, or even within hailing distance, of the guards, who are busy with the searches . . . But the heart of the plaintiffs' claim, with enough merit to withstand a motion to dismiss, is that the jail is subjecting them to a risk of serious harm by an unreasonably protracted detention of them out of sight and hearing of the guards.

396 F.3d at 893-94.

So there followed discovery and some of the allegations of the complaint failed of proof. The

**STATEMENT**

lockdown procedure was not designed and administered as the plaintiffs had alleged.  The operating procedures during lockdown called for correctional officers to check on the status of prisoners every 30 minutes.  These checks were supplemented by the thrice daily headcounts that are standard practice everywhere in the jail.  Moreover officers either delivered meals or accompanied those who did.  Apart from these routine encounters with inmates, there were other contacts that occurred whenever inmates did leave their cells, because confinement during lockdown is not an absolute.  Prisoners can leave cells for pre-arranged visits with outsiders (or unscheduled visits from those who had traveled more than 150 miles to the jail), for visits with attorneys, for certain types of medical or psychological care, or for work.  When they returned to the cell they were accompanied by a guard because the cell had to be locked manually by an officer.  When the cells were searched in a given tier, the inmates were removed from the cells and moved to the day room or a recreation room.

Under these circumstances the premise of the complaint which began the case is wrong and there is no dispute about this. Based on cases like *Butera v. Cottey,* 285 F.3d 601 (7th Cir. 2002) it is not a constitutional violation to check on prisoners twice every hour.  The original complaint was a proposed class action directed at a wrong perpetrated against all the inmates by virtue of a practice and procedure mandated by the directors of the institution.[2]  The class certification has been denied and the procedure mandated by directors is not the one described in the complaint.  The ground on which the plaintiffs now stand can be characterized as a lesser included claim in the complaint.

The plaintiffs have evidence that the lockdown procedure, whatever its constitutional sufficiency in the abstract, was not executed as required; that is, due to an inadequate number of correctional officers, the 30 minute check was not always made and other safeguards were not routinely applied so that inmates were out of the hearing and sight of officers.  There is also evidence that two of the plaintiffs were physically injured in encounters with other inmates during which calls for assistance were made to officers who did not respond until well past 30 minutes had elapsed.[3]

There is no dispute that searches for contraband serve legitimate purposes in jails.   The lockdown is an appropriate way to ensure the effectiveness of such searches even if it is not the only way or the best way.

There is a specific factual dispute over whether the lockdown policy and prescribed practices, sufficient as they may be on paper, were followed on the ground.  There is, arguably, a factual dispute of whether the specific incidents complained of were isolated failures of administration or endemic to the lockdowns.  There is a dispute of whether the volume and nature of the incidents would justify a conclusion that the Sheriff did know or should have known of the failures and their consequences and, for this reason, acted with deliberate indifference to a known risk.  I should note that, while no claim for relief can be made on the sole ground that the lockdown was unreasonably protracted, the plaintiffs are entitled to prove, if they can, that the length of the lockdown increased the dangers to which the jail officials were deliberately indifferent.  The longer the lockdown, the greater the chance of occasions in which correctional officers would fail to exercise required oversight of inmates due to other demands on them or other causes.

Little of the plaintiffs' various cases are easy to prove.  These are tort claims requiring proof of more than negligence and each single incident alleged to have occurred suggests negligence at least as much as it suggests intent or deliberate indifference.  There are some incidents which, at this stage, I assume occurred as described that do establish that inmates were not within hearing or sight of correctional officers for considerable periods of time.  There is testimony by inmates, who were not subject to incidents, that based on what they saw or heard, there were no guards in earshot.  This testimony may be attacked on grounds that the

# STATEMENT

inmate was not in an appropriate location to make that conclusion but this is a matter of disputed fact. So too is the question of whether one of the techniques used to keep inmates in sight, crosswatching, was inherently ineffective. Koss and Gelso, who testify to physical injuries at the hands of other inmates when guards did not respond to cries of help, have claims that are triable. Gandy may have a triable claim as well for the lack of response to her inability to breath after her asthma pump failed.

Morales, Hart and Gandy (in part) do not have cases because they do not have cognizable injuries. They suffered from being locked in cells, felt they were being punished and lost sleep. These claims, for which they would pursue at least nominal damages, are not within the ambit of the theory on which the Court of Appeals held that the case could proceed.

Nothing in the Court of Appeals' opinion indicated that it was overruling or modifying its previous doctrine that increased risk, real or perceived, can give rise to any claim of damage. The unnecessary presence of risk created or allowed by conduct which evinces deliberate indifference to the existence of that risk is the legal basis for compensating an inmate who suffers some concrete injury beyond feelings of fear and unjust punishment. This limitation on causes of action filed by inmates is similar to the rule which does not allow a pedestrian to sue for damages when missed by a reckless driver who, later, out of sight of the pedestrian, hits and kills someone in a crosswalk. The general preclusion of damages for inmates who feel fear, claustrophobia, loss of self-worth and a sense of unjust punishment is, in my view, a consequence of the fact that simply being in any jail would cause these feelings to occur in very many people. The law does compensate prisoners for psychological torture intentionally inflicted for the purpose of causing psychological pain which cannot be said of the conduct of the officers in this case. *See Calhoun v. DeTella,* 319 F.3d 936 (7th Cir. 2003) (Guards conducted strip search of a male prisoner after inviting female guards to witness the event during which ribald comments were made as were explicit sexual gestures).

The motions for summary judgment against Anne Francis Gelco and Helen Koss are denied.

The motions for summary judgment against Genise Hart, Caprice Morales and Carmen Feliciano are granted.

The motion for summary judgment against Michelle Gandy is granted in part and denied in part. Her claim with respect to the failure to provide emergency medical treatment remains in the case.

1. I do not resolve here the issue of whether the act of stopping lockdowns can be admitted as evidence against defendants. The defense claims this is a remedial measure and thus inadmissible. The plaintiffs claim the act is not remedial. The defense says that, even if not remedial, the act is not admissible since lockdowns fall withing a range of permissible approaches and a decision to use a different approach cannot be deemed an admission that the lockdown was wrong or unnecessary. Nor do I consider the opinions of Charles Fasano who may be an expert on or an acute observer of the proper ways to run a jail. He did not come into the case in the manner required by Rule 26 and he is not, as the plaintiffs say, an ordinary fact witness.

2. In my view this case is inappropriate to a class action. A class action *might* have been appropriate had the formal lockdown procedures been as the complaint described them. But they were not. The plaintiffs now say that the formal procedures were sometimes not followed. I infer that there were weekends where the procedures were followed. I think it would not be useful to have class actions for the separate class for each weekend that proper procedures were

not executed. I think also that it would be difficult for plaintiffs' counsel to identify the specific weekends where the procedures failed.

3. Plaintiffs offer other theories of liability but I, in the exercise of my authority under Federal Rule of Civil Procedure 16, had ruled (quite some time ago) that the sole issue to be decided after remand was the issue that the Court of Appeals had identified as the survivable claim in the complaint. I have denied motions to consolidate the broader range of issues raised in other complaints before other judges of this court. I dismissed the original complaint. The Court of Appeals found that a fairly narrow aspect of the complaint should proceed. If other aspects of the lockdown were to be challenged, it was best that such a litigation merited a fresh start.

For these reasons, I do not consider a claim that keeping prisoners in their cells for 48 hours or longer is "punishment" under the line of cases that followed *Bell v. Wolfish,* 441 U.S. 520 (1979). Nor do I consider whether the lockdown was excessive in relation to its purpose. The argument that the lockdowns created fear for personal safety is beyond the scope of the one theory which the Court of Appeals sustained and, in any event, there is no cause of action for enduring fear in jail (which might reasonably be felt by anyone incarcerated in any multi-inmate institution). *Babcock v. White,* 102 F.3d 267, 272 (7th Cir. 1996). The argument that there was denial of medical care is beyond the limits of the claim properly before me and, in the circumstances here, impossible to sustain by those individual plaintiffs who allege no damages from the failure to provide medication in a non-emergency. See *Lucien v. Godinez,* 814 F.Supp. 754 (N.D. Ill. 1993).